RAZORBACK CAB OF FORT SMITH, INC. *v.* Richard
H. MARTIN

92-1459                                                     856 S.W.2d 2

Supreme Court of Arkansas
Opinion delivered June 14, 1993

*Skinner Law Firm*, P.A., by: *Jack Skinner*, for appellant.

*Karr, Hutchinson & Stubblefield*, by: *Charles Karr*, for appellee.

STEELE HAYS, Justice. Appellee Richard Martin sued appellant Razorback Cab of Fort Smith, Inc., for personal injuries sustained by Martin when he was struck by a Razorback cab. The jury trial ended in a verdict for Razorback, but the trial court granted Martin's motion for a new trial. On appeal we sustain

Razorback's contention that the trial court erred in setting aside the verdict.

Around 6:30 on the morning of January 30, 1990, while it was still dark, Richard Martin was riding his bicycle west on Rogers Avenue in Fort Smith. Martin was in the right hand lane next to the curb. Rogers Avenue has four lanes, two each for opposing traffic and a fifth lane in the middle. Martin was wearing dark clothing except for a reflective jogger's vest attached to his back pack. There were no lights on his bicycle but there were reflectors on the front and rear and on the spokes and pedals of the bicycle. The rear reflector, situated under the seat, was obscured by a carrying rack over the rear of the bicycle.

The collision occurred, by some accounts, when Morgan moved to the right lane and struck Richard Martin. On striking Martin, Morgan swerved to his left and in so doing struck the left rear of Sargeant's vehicle which was still in the left-hand lane. Richard Martin suffered injuries and was taken to the hospital.

Richard Martin filed suit against Razorback Cab, seeking damages of $50,000. At the trial all of the aforementioned witnesses testified except O.J. Morgan, who had died. The jury returned a verdict for Razorback, but on a motion for a new trial filed by Richard Martin, the trial court set aside the jury verdict upon a finding that there was no evidence that Morgan could not see the bicycle, that Morgan was negligent in failing to maintain a proper lookout. Razorback appeals from that order.

■ The law affecting the granting of a new trial and appellate review of that decision is settled. A trial court may not substitute its view of the evidence for that of the jury and grant a new trial unless the verdict is *clearly* against the preponderance of the evidence. Ark. R. Civ. P. 50(a); *Turrise* v. *Crane*, 303 Ark. 576, 798 S.W.2d 684 (1990). The test we apply on review on the granting of the motion is whether the trial court abused its discretion. *Scott* v. *McClain*, 296 Ark. 527, 758 S.W.2d 409 (1988); *Clayton* v. *Wagnon*, 276 Ark. 124, 633 S.W.2d 19 (1982). A showing of abuse is more difficult when a new trial has been granted because the party opposing the motion will have another opportunity to prevail. *Turrise* v. *Crane, supra; Worthington* v. *Roberts*, 304 Ark. 551, 803 S.W.2d 906 (1991). In *Worthington* v. *Roberts, supra*, we noted that "abuse of discre-

tion in granting a new trial means a discretion improvidently exercised," i.e., exercised without due consideration.

There were four witnesses to the accident. Ronnie Martin was a passenger in the front seat of Morgan's cab. In the right-hand lane was Danny Walden, the last of the three vehicles westbound at the time of the accident. Finally, there was John Sargeant, who was in front of Morgan's cab traveling in the left-hand lane.

In addition to the eyewitnesses the testimony of the investigating officer was to the effect that the speed light was 40 miles per hour, that the bicycle had no lights, front or rear, and while "there was a red reflector underneath the bicycle seat, it would not be visible to the rear." He testified that riding a bicycle at night in Fort Smith without a light is illegal.

One discrepancy in the testimony relates to whether Morgan was in the left-hand lane and struck Martin momentarily after moving to the right hand lane, or whether Morgan was in the right-hand lane for some blocks before striking Martin. Ronnie Martin, Morgan's passenger, testified that Morgan never changed lanes, that he was in the right-hand lane from the time he entered Rogers Avenue at 74th Street, several blocks east of the point of impact. Danny Walden, also traveling west in the right hand lane, testified to the contrary that the accident happened when Morgan changed lanes and seconds later struck Richard Martin.

The jury may have resolved this conflict on the side of Walden's testimony and determined, not inappropriately, that the bicycle was more visible directly from behind than from the side and that Morgan was either not at fault for failing to observe the unlit bicycle or, at most, was guilty of negligence no greater than Richard Martin's in accordance with the comparative negligence instruction. In fact, the jury could have inferred from either the testimony of Walden or the officer that the visibility of the bicycle was decidedly restricted from either the side or the rear. Walden: "When I saw the bicyclist, it was too late to avoid an accident, as it was just almost instantaneous." Ronnie Martin's testimony is less emphatic: "When I first saw the flickering of the pedals, [Morgan] was far enough behind to have stopped without hitting [Richard Martin]. When I got closer and the

lights from the oncoming traffic illuminated it, I could tell it was a person on the bicycle. We were far enough behind that [Morgan] could have stopped the cab at the speed he was driving."

John Sargeant, driver of the forward cab, testified:

Q: —Mr. Sargeant, if I may, and that is, immediately before the accident, did you see anything, light reflector, flash, flicker, anything, that indicated to you that there was a bicyclist in the lane next to you?

A: No, the reason being, is that the traffic, and it was heavy coming out of Fort Smith, coming over the brow of the hill, at an approximate 64th and Rogers. It was coming directly out over the brow of the hill in front, swinging over to the left-hand side of me; on the right-hand side is the side of the hill and it was black. And there was no possible chance for anybody, not even a cab, to be able to see anything there, most especially dark clothing, most especially no lights.

Q: Before you changed into the outside lane, going west, was there any reason that you changed into the outside lane, going west, right then, other that it was closer to get on to the interstate?

A: No, that was the sole reason I would have, to get over there, and at the time I changed lanes, it was perfectly safe, there was no traffic close enough to interfere with my change, whereas there may have been, had I waited till I got to the 540 and Rogers.

Q: You did not change lanes because of the bicyclist?

A: No, had I not changed lanes, I would have hit him, there was no way to see that gentleman.

In sum, we cannot agree with the trial court that the verdict was clearly against the preponderance of the evidence. To the contrary, there was testimony of a substantial nature which quite plainly supported the verdict, and which was at least the equivalent of any countervailing evidence. Having only the trial court's comment to the effect there was no evidence to support the verdict, which we cannot reconcile with the testimony of Sargeant and with other circumstantial evidence, we are of the opinion that

the trial court substituted its view of the evidence in lieu of the jury and a manifest abuse of discretion resulted.

Reversed and dismissed.