## GIBSON APPLIANCE COMPANY *v.* NATIONWIDE INSURANCE COMPANY

99-923                                                        20 S.W.3d 285

Supreme Court of Arkansas
Opinion delivered June 8, 2000

*Christopher C. Piazza*, Judge;

*Womack, Landis, Phelps, McNeill & McDaniel*, by: *J. V. Phelps* and *Jeffrey L. Singleton*, for appellant.

*Huckabay, Munson, Rowlett & Tilley, P.A.*, by: *Terry Dugger*, for appellee.

W.H. "DUB" ARNOLD, Chief Justice. This appeal is taken from a jury verdict in a products liability action. The appellant asserts that it is entitled to a new trial or, in the alternative, judgment notwithstanding the verdict. We disagree and hereby affirm the trial court.

The case involves an action which was originally filed by Raymond and Vivian Ross against appellant Gibson Appliance Company, a division of White Consolidated Industries, Inc. (hereinafter "Gibson"), to recover for damages sustained to their home by fire on March 9, 1993, caused by either the manufacture by Gibson of a defective and unreasonably dangerous refrigerator, or Gibson's negligence. More specifically, the Rosses' action against Gibson encompassed all theories available under the products liability law, including negligence, breach of warranty, and strict liability. Subsequent to the filing of the initial complaint, on or about March 1, 1996, appellee Nationwide Insurance Company (hereinafter "Nationwide") was substituted as the party plaintiff in lieu of Mr. and Mrs. Ross, pursuant to a determination by the trial court that Nationwide was the real party in interest.

Gibson denied all allegations of fault and attributed the fire to a burner that was allegedly left on in the Rosses' home, igniting particles in a skillet which Gibson maintains caused the fire to spread to the rest of the kitchen. Gibson further challenged service of process because it was not served with a copy of the summons and complaint within 120 days after Nationwide had filed its com-

plaint, although Nationwide had timely moved for and was granted an extension of time to perfect service by the trial court.

The case was tried on January 11 and 12, 1999. Prior to trial, both sides stipulated that the damages totaled $37,739.89. After deliberating, the jury returned a verdict in favor of appellee Nationwide in the amount of $11,336.32. After trial, Gibson filed a motion for new trial or, in the alternative, judgment notwithstanding the verdict. As grounds, Gibson alleged that although the verdict form was a general one, the jury's verdict obviously apportioned over fifty percent of fault to Nationwide's insured, that the jury's verdict was not supported by substantial evidence, and that the jury's verdict was the product of passion and prejudice. In a hearing on the motion, the trial court denied Gibson's motion. It is from the judgment and order denying its motion for new trial or, in the alternative, motion for judgment notwithstanding the verdict that appellant Gibson now appeals.

Appellant asserts the following points:

1) The trial court erred in denying the summary judgment motion of Gibson Appliance Company based on Nationwide Insurance Company's failure to show "good cause" for an order extending time for service of the complaint;

2) The trial court erred in denying Gibson Appliance Company's motion for new trial or, in the alternative, motion for judgment notwithstanding the verdict.

   A. The jury's verdict apportions more than fifty percent of fault to Nationwide Insurance Company's insured;

   B. The jury's verdict is clearly against the preponderance of the evidence;

   C. The jury's verdict is not supported by "substantial evidence";

   D. The jury's verdict is the product of passion and prejudice by the jury.

## I. Denial of Summary Judgment

The plaintiffs below (Nationwide) filed suit within the time allowed by the statute of limitations, but did not obtain service on the defendant (Gibson) within 120 days, as required by Rule 4(i) of

the Arkansas Rules of Civil Procedure. However, on the 120th day, Nationwide filed a motion for extension of time in which to obtain service. In its motion, it merely stated that it had attempted service and that an investigation was being conducted to determine the defendant's address. The motion was granted by the trial judge, who found "good cause," as required by Rule 4(i). Service was then perfected within five days thereafter.

Upon answering the complaint, Gibson claimed that Nationwide had not shown "good cause" for the extension of time. A motion for summary judgment was subsequently filed on the issue. At a hearing on the motion for summary judgment, Nationwide presented additional proof of good cause. The motion for summary judgment filed by Gibson was denied by the trial court, and Gibson now appeals from that denial.

■■ It is a well-settled principle of Arkansas law that, generally speaking, a trial court's order denying a motion for summary judgment is neither reviewable nor appealable. *See Ozarks Unlimited Resources Coop., Inc. v. Daniels*, 333 Ark. 214, 969 S.W.2d 169 (1998); *Direct Ins. Co. v. Lane*, 328 Ark. 476, 944 S.W.2d 528 (1997). Gibson, however, contends that the trial court's ruling *is* reviewable on appeal, because in its motion for summary judgment Gibson had raised the issues of the running of the statute of limitations and naming the insurance company as the real party in interest. Gibson contends that because it raised these issues in its first responsive pleading, and properly preserved them, the trial court's ruling on this issue is akin to a ruling on a motion to dismiss, and not summary judgment. We find this argument to be without merit. This Court has repeatedly refused to address arguments where the effect of doing so is tantamount to reviewing the denial of a motion for summary judgment. *See Nucor Holding Corp. v. Rinkines*, 326 Ark. 217, 931 S.W.2d 426 (1996); *Nucor-Yamato Steel Co. v. Circuit Court*, 317 Ark. 493, 878 S.W.2d 745 (1994); *Wise Co. v. Clay Circuit*, 315 Ark. 333, 869 S.W.2d 6 (1993), *reh'g denied*, 315 Ark. 335(A), 896 S.W.2d at 8 (1994). Accordingly, we hold that Gibson's argument that summary judgment should have been granted in its favor on this issue is not subject to appellate review and will not be addressed.

## II. Motion for New Trial or, in the alternative, JNOV

Gibson contends that it is entitled to a judgment notwithstanding the verdict (JNOV) or a new trial for several reasons. First, Gibson asserts that the jury's verdict necessarily and mathematically apportions fault in excess of fifty percent to Nationwide based on the imputable conduct of its insureds, Raymond and Vivian Ross. Gibson asserts that because Nationwide's fault exceeded that of Gibson, Gibson is entitled to have a verdict entered in *its* favor as a matter of law because the verdict is unenforceable under state law. Additionally, Gibson asserts that the verdict in favor of Nationwide is clearly against the preponderance of the evidence, is not supported by substantial evidence, and is the product of passion and prejudice by the jury.

### A. Whether the jury's verdict apportioned more than fifty percent of fault to Nationwide Insurance Company's insured

It *was* stipulated that Nationwide's damages totaled $37,739.89, which represents the amount it paid Raymond and Vivian Ross for the damage to their home as a result of the fire. Not only was this document entered as evidence, but it was read to the jury during trial. Appellant contends, and the record reflects, that at the completion of all the evidence, the case was submitted to the jury, without objection, on a comparative-fault instruction that required that Nationwide's damages be reduced by the percentage of the fault of Raymond and Vivian Ross.

Arkansas law concerning comparative fault is set by statute. Ark. Code Ann. § 16-64-122 (Supp. 1999) states in pertinent part:

> (a) In all action for damages for personal injuries or wrongful death or injury to property in which recovery is predicated upon fault, liability shall be determined by comparing the fault chargeable to a claiming party with the fault chargeable to the party or parties from whom the claiming party seeks to recover damages.
>
> . . .
>
> (b)(2) If the fault chargeable to a party claiming damages is equal to or greater in degree than any fault chargeable to the party or parties from whom the claiming party seeks to recover damages, then the claiming party is not entitled to recover such damages.

(c) The word "fault" as used in this section includes any act, omission, conduct, risk assumed, breach of warranty, or breach of any legal duty which is a proximate cause of any damages sustained by any party.

. . .

Here, the jury's verdict, awarding only $11,336.32 in favor of Nationwide when the amount of damages was *stipulated* to be $37,739.89, may indeed indicate that it apportioned fault to Gibson well below the required fifty-one percent required by law for Nationwide to recover. However, appellant failed to abstract the comparative-fault instruction which was submitted to the jury, upon which it relies in order to prove that the jury was intentionally making the apportionment Gibson contends it made.

■ We have consistently held that our review on appeal is limited to the record *as abstracted*, and we will not reach the merits of a case when documents in the transcript that are necessary for an understanding of the case are not abstracted. *See Warnock v. Warnock*, 336 Ark. 506, 988 S.W.2d 7 (1999); *Burns v. Carroll*, 318 Ark. 302, 885 S.W.2d 16 (1994). Rule 4-2(a)(6) of the Rules of the Supreme Court and Court of Appeals provides, in relevant part:

> The appellant's abstract or abridgment of the record should consist of an impartial condensation, without comment or emphasis, of only such material parts of the pleadings, proceedings, facts, documents, and *other matters in the record as are necessary to an understanding of all questions presented to the Court for decision.* . . .

(Emphasis added.)

Clearly, without the ability to consider the comparative-fault instruction the jury was given, since it was not abstracted as required, it is impossible for this Court to determine, without resorting to speculation, whether the jury followed said instruction. Moreover, appellant did not request that the jury be given special interrogatories, which would have required them to clearly apportion fault, if that is indeed what they were doing. Further, appellant did not object to or seek clarification regarding the verdict before the jury was discharged.

■ This court has held that the time to object to an irregularity or inconsistency in the verdict is prior to the discharge of the jury. *See P.A.M. Trans., Inc., v. Ark. Blue Cross & Blue Shield*, 315 Ark. 234, 868 S.W.2d 33 (1993); *Wal-Mart Stores, Inc. v. Kelton*, 305

Ark. 173, 806 S.W.2d 373 (1991); *Center v. Johnson*, 295 Ark. 522, 750 S.W.2d 396 (1988). Appellant contends that these cases do not apply because there was no "inconsistency" or "irregularity" in the jury's verdict. In fact, appellant contends that the verdict was very clear in articulating the jury's intent to apportion seventy percent of the fault to Nationwide. Appellant contends that this verdict was not factually impossible, but it was simply legally unrecognizable, in light of the comparative-fault statute.

■ Appellant states on the one hand that the verdict is *not* "inconsistent," but then on the other hand argues that the verdict is inconsistent with the comparative-fault instruction the jury was given. As stated above, given that the instruction in question was not abstracted, and further that no objection was made nor clarification sought from the jury before it was discharged, this Court is left only to speculate about what the jury's verdict means. As such, we will not question the jury's verdict.

### B. Whether the jury's verdict was clearly against the preponderance of the evidence.

Appellant Gibson next contends that when Nationwide's proof is compared to the proof put forward by Gibson, a verdict in Nationwide's favor is clearly contrary to the preponderance of the evidence, and that, therefore, the trial court's failure to grant a new trial constitutes an abuse of discretion. We disagree.

At trial, both Raymond and Vivian Ross testified that they had not had any problems with the refrigerator prior to the fire and that no maintenance, repairs, alterations, or modifications had been done to the refrigerator by them or anyone else since the date it was purchased. The Rosses also testified that the stove next to the refrigerator was not being used for any purpose whatsoever when the fire occurred.

In addition, Nationwide produced the testimony of two expert witnesses, Craig Andres and Lonnie Buie. Andres is a qualified fire investigator and cause-and-origin expert, who testified that the fire originated from, and inside, the refrigerator, based on his investigation and inspection of the fire scene. Buie, a qualified expert in electrical engineering and fire investigations, opined that the fire started inside the refrigerator and was caused by the produc-

tion of electrical arcing, which in turn resulted from the defective condition of the wiring inside the refrigerator.

In rendering his opinions, Craig Andres relied on his *personal inspection* of the fire scene conducted on March 11, 1993, two days after the fire, which allowed him to follow and trace all of the burn and heat patterns generated by the fire. Even Gibson's purported expert, Richard Keith, agreed that a personal inspection is always the preferred method of conducting an investigation. Interestingly, Keith did not even inspect the fire scene or refrigerator, even though he acknowledged the importance of doing so, and in fact, was not even hired by Gibson until October 20, 1998, approximately five years and some months after the accident.

■ Certainly, when examining the evidence, the weight and value of testimony is a matter within the exclusive province of the jury. *See Hall v. Grimmett*, 318 Ark. 309, 885 S.W.2d 297 (1994). The crux of Gibson's argument that the trial court should have granted its motion for directed verdict, and presently its motion for judgment notwithstanding the verdict, is Nationwide's alleged failure to prove either the existence of a defect and establish that the defect caused the damage, or that Gibson was negligent.

■ At trial, there was conflicting testimony and opinions as to the cause of the fire and the probability that a defective condition of the refrigerator caused the fire that subsequently damaged the Rosses' residence. Nationwide's theory was that the refrigerator was defective and unreasonably dangerous, and/or negligently manufactured, thus causing the fire, while Gibson's proposed alternative theory was that the fire originated on the Rosses' stove top and spread to the refrigerator. As previously stated, it was within the jury's province to believe Nationwide's theory over Gibson's version. Gibson cannot even argue that Nationwide's experts were not properly qualified because Gibson did not object to the testimony and opinions of either based on their qualifications. As such, we cannot say that the jury's verdict was clearly against the preponderance of the evidence.

### C. Whether the jury's verdict was supported by "substantial evidence."

■■ The standard of review for a motion for new trial or, in the alternative, a motion for judgment notwithstanding the verdict,

is the same for each, *i.e.*, whether there is substantial evidence to support the jury verdict. *Pearson v. Henrickson*, 336 Ark. 12, 983 S.W.2d 419 (1999); *Esry v. Carden*, 328 Ark. 153, 942 S.W.2d 846 (1997). In determining whether a new trial should be granted, a trial court may not substitute its view of the evidence for that of the jury in granting a new trial unless the verdict is clearly against a preponderance of the evidence. *See Razorback Cab of Fort Smith, Inc. v. Martin*, 313 Ark. 445, 856 S.W.2d 2 (1993). As stated above, based upon the evidence adduced at trial and the testimony of the experts on both sides, we cannot say that the jury's verdict was clearly against the preponderance of the evidence. As such, the only question remaining is whether there was substantial evidence to support the jury's verdict.

Substantial evidence is defined as "evidence of sufficient force and character to compel a conclusion one way or the other with reasonable certainty; it must force the mind to pass beyond suspicion or conjecture." *Hall v. Grimmett, supra*. In addition, we have held that in examining whether substantial evidence exists, all evidence must be examined in the light most favorable to the party on whose behalf the judgment was entered and given its highest probative value, taking into account all reasonable inferences deducible from it. *Id.*

In the instant case, when the evidence is viewed in a light most favorable to Nationwide, clearly substantial evidence existed to support the jury's verdict in Nationwide's favor. Certainly, in light of the evidence and testimony discussed above, there was ample evidence of a substantial nature which quite plainly supported the jury's verdict and which was, at the very least, the equivalent of any countervailing evidence.

Nonetheless, Gibson appears to be attacking the weight given the opinions of Nationwide's experts. Gibson cites no authority whatsoever, however, for the proposition that a verdict cannot be sustained because the experts presented by both parties disagree and espouse opposing theories. First of all, juries are not bound to accept an expert opinion as conclusive, but should give it whatever weight they think it should have and may disregard any opinion testimony if they find it to be unreasonable. See AMI 106.

Secondly, the law is quite clear that a qualified expert's opinion constitutes substantial evidence unless it is shown that the expert's opinion is without a reasonable basis. *Buchanna v. Diehl*, 98

F.3d 366, 369 (8th Cir. 1996), *quoting Ford Motor Co. v. Massey*, 316 Ark. 345, 855 S.W.2d 897, 899 (1993). Again, Gibson, like the plaintiff in *Buchanna*, cannot argue that Andres or Buie were not properly qualified because Gibson did not object to the testimony and opinions of either based on their qualification. Moreover, there was a reasonable basis for both of their opinions. Gibson had an opportunity to cross-examine each of them to try to show that their opinions had a questionable basis. Such an opportunity was all that was required, and the jury was entitled to credit the testimony of Andres and Buie if it so chose, which obviously it did.

In short, when viewed in a light most favorable to Nationwide, substantial evidence clearly existed to support the jury's verdict in its favor. Therefore, as such, we cannot say that the trial court erred in denying appellant's motion for new trial or, in the alternative, a motion for judgment notwithstanding the verdict.

### D. Whether the verdict was the product of passion and prejudice by the jury.

Gibson contends that the jury's verdict was the product of passion and prejudice, and that the trial court's denial of it's motion for new trial because of this fundamental unfairness constitutes an abuse of discretion and is reversible error. We disagree.

The record in this case reflects that after several hours of deliberation, the jury submitted a series of questions to the trial court, the first of which was not documented by the court reporter and is not part of the record herein but, according to appellant, concerned whether the refrigerator was grounded at the time of the fire. The jury stated in its next question that it could perhaps reach a compromise but that it needed to know which alternative in the comparative-fault instruction would not affect the "credibility" of Nationwide's insured couple, the Rosses, whose home was the site of the fire. The jury was then instructed that it was only to base its verdict on the "evidence in the case." The final jury question simply asked whether the Rosses could be sued. After being advised by the court that the Rosses could not be sued, the jury returned its verdict within fifteen minutes.

Gibson contends that the jury clearly made its compromise decision on the basis of whether or not the Rosses could be sued for the damage caused by the fire, and not on the basis of the

evidence. Gibson contends that the jury's obvious concern with the legal ramifications of its factual conclusions on a disinterested third party clearly shows that the jury's verdict was influenced by passion and prejudice for the Rosses. We find appellant's arguments to be unpersuasive.

First, there is no evidence to support appellant's contention on this point. The sole fact that the jury asked questions in regard to the Rosses fails to prove that the jury's verdict was based on passion or prejudice. In fact, the verdict that the jury awarded, in and of itself, was substantially less than the amount of damages sustained and stipulated; this clearly demonstrates that the jury's determination was not improperly influenced. Further, the appellant cites no case law or other authority in support of its position on this point. As discussed previously, if Gibson was of the opinion that the jury's verdict was irregular or inconsistent, or even unclear, it had a duty to raise these issues at trial and before the jury was discharged; it chose not to do so.

In short, it is clear that the jury chose to believe Nationwide's theories as to the cause and origin of the fire, which it was certainly at liberty to do, and discounted those theories proffered by Gibson. At the same time, it would amount to little more than speculation and conjecture for us to attempt to ascertain at this point the basis for the jury's verdict, which was general in nature and was not questioned at the appropriate time. Quite simply, Nationwide put on sufficient and substantial evidence to support its claims against Gibson, as well as create a question for the jury on the issues of product liability, negligence, and breach of warranty. Accordingly, we hold that the trial court's actions were proper, and the jury's verdict should stand.

Affirmed.