Virginia P. BAILEY *v.* Marilyn McROY

CA 06-878 258 S.W.3d 388

Court of Appeals of Arkansas
Opinion delivered June 6, 2007

*Watts, Donovan & Tilley, P.A.*, by: *Karen J. Hughes* and *Staci Dumas Carson*, for appellant.

*Wilson, Walker & Short*, by: *Charles M. Walker*, for appellee.

DAVID M. GLOVER, Judge. In the early-morning hours of July 15, 2000, appellant, Virginia Bailey, and appellee, Marilyn McRoy, were involved in a two-vehicle accident. The wreck occurred at a large, well-lit, intersection that was controlled by a traffic light at approximately 1:30 a.m. Bailey was following an ambulance that was transporting her son to the hospital after he suffered an ATV accident; McRoy was on her way to pick up her husband from work. McRoy filed a lawsuit against Bailey, alleging that as a direct and proximate result of Bailey's negligence, McRoy's vehicle was damaged and she suffered injuries to her back and hips. McRoy further alleged that as a result of those injuries she suffered permanent bodily impairment, physical pain, suffering and mental anguish, and will continue to do so in the future. The jury returned a general verdict, finding for Bailey.

McRoy's attorney made an oral motion for judgment notwithstanding the verdict, which was denied. McRoy then filed a motion for new trial, alleging that the verdict was clearly contrary to the preponderance of the evidence. Bailey filed a motion to recover costs pursuant to Rule 68 of the Arkansas Rules of Civil Procedure. The trial judge granted McRoy's motion for a new trial, and in light of that decision, denied Bailey's motion for costs. Bailey now appeals, arguing that the trial judge erred in granting a new trial and in denying her motion for costs. We find merit in both of these arguments, and we reverse and remand this case for entry of orders consistent with this opinion.

Our supreme court set forth our appellate standard of review for motions for new trial in *Razorback Cab v. Martin*, 313 Ark. 445, 446-47, 856 S.W.2d 2, 3 (1993) (citations omitted):

> The law affecting the granting of a new trial and appellate review of that decision is settled. A trial court may not substitute its view of the evidence for that of the jury and grant a new trial unless the verdict is clearly against the preponderance of the evidence. The test we apply on review on the granting of the motion is whether the trial court abused its discretion. A showing of abuse is more difficult when a new trial has been granted because the party opposing the motion will have another opportunity to prevail. In *Worthington v. Roberts*, [304 Ark. 551, 803 S.W.2d 906 (1991)], we noted that "abuse of discretion in granting a new trial means a discretion improvidently exercised," *i.e.*, exercised without due consideration.

At trial, McRoy testified that about a hundred feet before the intersection where the accident occurred, she had slowed down to cross the railroad track; she saw that she had a green light, and approached the intersection slowly. McRoy said that she realized that she had been hit "about the time I went through that green light." She testified that she did not see anyone approaching the intersection, and she did not see an ambulance. She stated that she got hit and then she was "just spinning," turning twice and ending up on the other side of the intersection. McRoy said that Bailey came up to her and that she was upset because Bailey was headed to the hospital. McRoy said that she asked Bailey not to leave her, but that the police came and Bailey left. McRoy said that after her husband arrived, he helped her get out of the car and that she had to crawl to the other side to get out because she could not get out on the driver's side.

McRoy testified that she went to the hospital about 3:00 a.m. because she was hurting. She was x-rayed and given pain medication because her shoulder and lower back were hurting. McRoy saw her physician, Dr. Goins, three days later.

McRoy further testified that she had been involved in another car accident, in which she was rear ended, six or seven months prior to the accident with Bailey. She said that after the first accident, her chief complaints were her neck and upper back, as well as some headaches. She denied that she had any complaints about her lower back after the first accident.

McRoy said that her major complaints after the second accident were her lower back and shoulder. She said that Dr. Goins

sent her to Dr. Pearce for her shoulder. She stated that after six months of treatments, she was still having problems with her shoulder, left arm, and hand, and that she could still not lift her children because she had no grip in her left hand.

McRoy testified that Dr. Goins sent her to Dr. Russell in Little Rock for her lower back problems; that she saw him for over a year and a half; and that he helped her. She said that Dr. Russell prescribed a back brace for her and that she wears it all the time, except sometimes at night. She stated that she understood that she might have to have surgery for her lower back. McRoy said that she had already incurred medical expenses of more than $9000.

On cross-examination, McRoy was questioned about inconsistencies between her testimony in the present trial and in prior recorded statements, depositions, and testimony she had given. She did not recall giving a recorded statement on March 7, 2002, in which she asserted that she had been released from the 1999 accident and was not seeing a doctor when the second accident occurred. She did recall that someone took her deposition on November 17, 2003, but she said that she did not recall saying that the therapy for her neck was from the first wreck. However, her deposition indicated that McRoy said that she had physical therapy for her neck as a result of the first wreck. Her deposition also revealed that McRoy had stated that she had injured her low back in the second accident and no other part of her body. McRoy denied having a low-back injury prior to her second accident, and she denied that she had told Dr. Goins about any prior back problems. She also admitted that she had not told Bailey's attorneys about a 1995 incident where she went to the doctor for a low-back injury after she fell down some stairs; she denied that she had an injury but only went to the doctor because she was pregnant and wanted to make sure the baby was okay after a minor fall.

There were other inconsistencies between McRoy's testimony and her depositions and recorded statements. McRoy continued to assert that it was only her upper back that was injured in the first accident, but Bailey's attorney pointed out that McRoy had stated at the trial of her first accident that Dr. Safman had treated her for her lower back, which she now denied. McRoy also testified that she had not been released by Dr. Goins from the first accident when she had the second accident; however, in her recorded statement she said that she had been released. At trial, McRoy denied that she was still having problems from the first accident, stating that she was having pain from the second acci-

dent, but her deposition indicated that she had stated that she was still having pain from the first accident. There were further inconsistencies between McRoy's prior recorded statements and testimony she gave at the present trial, including the fact that she had previously given a recorded statement that she was able to go about all of her regular activities after both of the accidents, including her household chores and childcare duties, and at trial she said that she still could not even pick up her children.

Dr. Dale Goins, McRoy's treating physician, testified that he had been her physician since November 1999 and that he saw her after her second accident. He said that after the second accident, McRoy reported headaches, numbness in her left arm and hand, pain in her left arm, neck, and scalp. Dr. Goins testified that he also treated McRoy after her first accident and that she complained of neck pain and *low-back* pain at that time, which contradicted McRoy's testimony. Dr. Goins said he performed an MRI of her lower back in June 2000, prior to McRoy's second accident, which was normal. Dr. Goins stated that the first accident affected McRoy's neck, upper spine, and lower back, and that the second injury caused damage to her shoulder and exacerbated the problems in the neck and low-back area, making those conditions worse because there was an increase in symptoms. Dr. Goins offered the opinion that McRoy's lower back pain was aggravated as a result of the second accident.

Thomas McRoy testified on behalf of his wife. His testimony on direct examination was very similar to that of McRoy's testimony. On cross-examination, he testified that the only difference he could tell from the first accident to the second was McRoy's shoulder and back, and that she had experienced trouble with her back for the entire time. On redirect, he said that McRoy hurt more in her lower back after the second accident and that it had continued to hurt more than it did after the first accident.

Bailey testified that on the night of the accident, she had just been told that her son had been in a bad ATV wreck and was being transported to the hospital in an ambulance. She said that she had been told that her son was not expected to live. She caught up with the ambulance and was following it. She did not know what color her light was at the time of the accident. She testified that when she got to the intersection, all she remembered was an impact; that her car stopped exactly where the two cars hit; and that she did not remember McRoy's car spinning around. She said that McRoy's car went straight and then stopped down the road. Bailey said that

she did not see McRoy's car before the collision, that all she remembered was getting out of her car from where it had stopped. She said that she went to McRoy's car and asked if she was okay; that McRoy told her yes; that she told McRoy what was going on; and that McRoy told her to go to the hospital. Bailey stayed until the police arrived, and then the police let her go on to the hospital. Bailey said that the damage to her car was to the front left fender.

The jury was instructed that the party with the burden of proof was required to establish such proof by a preponderance of the evidence, which was defined as evidence which, when weighed with that opposed to it, has more convincing force and is more probably true and accurate. The jury was also instructed that if the evidence appears to be equally balanced, or if it cannot be said upon which side the evidence weighs heavier, they must resolve that question against the party who had the burden of proving it. The trial court told the jury that McRoy, as plaintiff, claimed damages from Bailey and that McRoy had to prove that she sustained damages, that Bailey was negligent, and that Bailey's negligence was a proximate cause of McRoy's damages. The jury was further instructed that an Arkansas statute provided that vehicular traffic facing a steady red stop signal shall stop before entering an intersection and shall remain standing until green or go is shown alone, and that a violation of this statute, although not necessarily negligence, is evidence of negligence to be considered with all of the other facts and circumstances in the case.

The trial judge also instructed the jury that the fact that an injury, collision, or accident occurred is not of itself evidence of negligence or fault on the part of anyone, and that in determining whether the driver of a motor vehicle was negligent, the jury could consider the rules of the road that it is the duty of the driver of a motor vehicle to keep a lookout for other vehicles or persons on the street or highway; it is the duty of the driver of a motor vehicle to keep his or her vehicle under control; and it is the duty of the driver of a motor vehicle to drive at a speed no greater than is reasonable and prudent under the circumstances, having due regard for any actual or potential hazard. The trial court also instructed the jury on proximate cause, including comparative fault. The jury was also instructed, among other things, that they were not required to set aside their common knowledge; that they were the sole judges of the weight of the evidence and the credibility of the witnesses; and that they were not bound by an expert opinion as conclusive but were to give it only the weight

they thought it deserved and could disregard any opinion if they found it to be unreasonable. After deliberations, the jury returned a general verdict in favor of Bailey.

Although under our standard of review it is more difficult to show an abuse of discretion when a new trial is granted because the opposing party has another opportunity to prevail, here we hold that there was evidence that supported the jury's verdict and that the trial judge erroneously substituted his own view of the evidence for that of the jury. We agree with Bailey that this case is similar to *Razorback Cab, supra,* in which our supreme court reversed the grant of a new trial. In that case, there were conflicting accounts of how the accident occurred, and the jury resolved the evidence in favor of defendant Razorback Cab. The trial court granted the plaintiff's motion for new trial, but our supreme court reversed, noting that the evidence was equivalent and could reasonably support either side's position.

In this case, both McRoy and Bailey said that they did not see the other one. Although McRoy said that her light was green and Bailey said that she did not know what color her light was, the jury was not required to believe McRoy's testimony. The testimony was conflicting as to how the accident occurred. Furthermore, inconsistencies in McRoy's testimony regarding her injuries were pointed out by Bailey's counsel, and McRoy's testimony conflicted at times with that of her doctor, Dr. Goins. The jury may have believed that the first accident, not the second, was the proximate cause of McRoy's injuries, despite McRoy's and Goins's testimony, or that both Bailey and McRoy were at fault for the accident. It is impossible to know because the jury returned a general verdict. It was McRoy's burden, as plaintiff, to prove that Bailey was negligent, and that her negligence was the proximate cause of McRoy's injuries. In this case, the evidence was conflicting, and the jury resolved the evidence in Bailey's favor. The verdict was not clearly against the preponderance of the evidence, and the trial judge abused its discretion in granting McRoy's motion for new trial.

Bailey also argues that the trial court erred in denying her motion for costs. Of course, as the trial court explained, it did so on the basis of its ruling granting McRoy's motion for new trial. Rule 68 of the Arkansas Rules of Civil Procedure provides, in pertinent part:

At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against him for the money or property or to the effect specified in his offer, with costs then accrued. If within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and judgment shall be entered. An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs. If the judgment exclusive of interest from the date of offer finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer.

 In this case, Bailey made an offer of judgment of $5,000 to McRoy on July 20, 2005. In the jury trial, held on March 21, 2006, the jury returned a defendant's verdict. In light of the fact that the trial court erred in granting a new trial, it also erred in denying Bailey's motion for costs. The judgment was not more favorable to McRoy than Bailey's offer; therefore, Rule 68 mandates that McRoy is to be liable for the costs incurred after Bailey's offer was made. Accordingly, the trial court's ruling denying Bailey these costs is reversed as well.

Reversed and remanded.

BAKER and MILLER, JJ., agree.