BRANDON J. HARRISON, Judge, dissenting. The majority has concluded that there was no abuse of discretion in granting Sparrow’s motion for a new trial. This conclusion is based on its finding that it was “unrefuted that appellee had the right of way, and the only defense asserted was that appellant did not see appellee before the collision.” I disagree with the majority’s conclusion and would hold that the circuit court abused its discretion by substituting its own view of the evidence for that of the jury. Because I would uphold the unanimous twelve-person jury verdict that was rendered in Tilley’s favor, I respectfully dissent. | fiSome additional factual detail helps show why I believe the circuit court and the majority have erred. As the majority explained, Officer Lee Goemmer testified that Tilley’s left-turning vehicle had to yield the right of way at the intersection where the accident occurred. But the officer also said that he was familiar with the intersection, that it was difficult to see oncoming traffic, and that to make a left turn as Tilley had done, a person must “ease out into the intersection. [Y]ou have to work your way out so you can see further. You have to kind of move into the intersection so you can see.” Officer Goemmer confirmed on the witness stand that he did not issue a citation to Tilley or Sparrow. Nolan Edwards, who saw the accident, testified that he observed Sparrow change lanes, from the inside lane to the outside lane, in front of him and then proceed through the intersection, where she hit Tilley’s vehicle. He told the jury that the intersection was a “rotten” one and that he didn’t see anything until Sparrow locked up her brakes. According to Edwards, neither Tilley nor Sparrow appeared to be speeding or driving abnormally. On cross-examination, Edwards agreed that the intersection was a “blind hole” and that someone waiting to turn left has to “take an extra effort.” Sparrow testified that she was driving her motorcycle normally, not speeding, and had just moved from the inside lane to the outside lane because the truck in front of her was turning left. She said that she knew she was going to hit Tilley because “he was over right coming directly at me as I’m going straight through my lane with a green light.” On cross-examination, she agreed that she was familiar with the intersection and that it was a “fair assumption” that Tilley could not see her. |7For Tilley’s part, he testified that he waited while six or eight cars passed through the intersection after the light had turned green; then he looked again down the street and saw no one in the outside lane. He, too, stated that this was a “bad intersection” and that “you probably don’t see less than half the block.” And speaking from his experience as a driver-education instructor, Tilley agreed that he had looked as best he could before he turned left and stated, “I’ve probably told kids a thousand times to do that. So it’s kind of in my mind.” He confirmed that he had checked the outside lane before he initiated his turn, that he “could see nothing in the outside lane,” and that he was not trying to beat anyone across the intersection or otherwise hurry for any reason. The jury weighed all the evidence presented and rejected Sparrow’s case against Tilley. But the circuit court viewed the evidence differently, as is evident in its explanation for why it granted Sparrow a second chance to win her case: I find that [the verdict] was contrary to the evidence. I don’t know exactly [how] they arrived at the verdict they came to. But based on the evidence I heard and based on the examination of the evidence after the fact, I do not know how a jury, based on this evidence, could have come to the conclusion because there’s a—there was a prima facie case established, but there was nothing, there’s no substantive evidence on the other side of that question.... You’ve got a defendant who’s saying I didn’t see her. Who virtually admits to not keeping a proper lookout and not doing what the rules of the road require him to do. So I don’t know how the jury came to the verdict it did.... [T]he only conclusion I can reach is [the jury] didn’t do its job on the issue of liability.... [A] motion for new trial is granted. Tilley did not virtually admit, to use the circuit court’s words, that he failed to keep a proper lookout. This case was contested, on all issues, from beginning to end. Though lathe circuit court clearly held an opinion of the evidence opposite the jury’s, it was not the fact-finder in this case. The majority is correct that our case law on the granting of a new trial is clear. A circuit court “may not substitute its view of the evidence for that of the jury and grant a new trial unless the verdict is dearly against the preponderance of the evidence.” Razorback Cab of Fort Smith, Inc. v. Martin, 313 Ark. 445, 446, 856 S.W.2d 2, 3 (1993) (emphasis in original). Whether a circuit court properly granted a motion for new trial is tested under the abuse-of-discretion standard. Carlew v. Wright, 356 Ark. 208, 148 S.W.3d 237 (2004). Here, the jury heard conflicting versions of the facts, was properly instructed, and no one claims that anything went afoul during the deliberative process. So it was up to the jury as the finder of fact to weigh all the evidence and resolve the issues of fact. The jury simply resolved any conflicting evidence—including any credibility issues—in Tilley’s favor. We should honor the jury’s decision. This case is akin to Razorback Cab, supra, where our supreme court disagreed with the circuit court’s decision that the verdict was clearly against the preponderance of the evidence. Like Razorback Cab, in this case “there was testimony of a substantial nature which quite plainly supported the verdict, and which was at least the equivalent of any countervailing evidence.” 313 Ark. at 448, 856 S.W.2d at 4. I would hold that the circuit court here substituted its own view of the evidence for that of the jury’s and therefore abused its discretion. Contrary to Sparrow’s characterization, the evidence is not “overwhelmingly” in her favor; the evidence reasonably supports either side’s position. Sparrow and the majority seem to reason that, because an accident occurred |9while Sparrow had the right of way, Tilley was necessarily negligent. But the jury was correctly instructed the opposite way: “The fact that a collision occurred is not, of itself, evidence of negligence on the part of anyone.” The jury was also told, among other things, that it was “the sole judge[ ] of the weight of the evidence and the credibility of the witnesses,” and that when considering the evidence it was “not required to set aside your common knowledge, but you have the right to consider all the evidence in the light of your own observations and experiences in the affairs of life.” Because the jury was properly instructed and its verdict was not clearly against the preponderance of the evidence, we should be reversing, not affirming, the circuit court’s order that granted Sparrow a second chance to win when she had a full and fair hearing the first time but simply failed to persuade the jury.