Containing Cases of the April and October Terms, 1925.

## ATLANTIC FRUIT COMPANY ET AL. v. PENNSYL-VANIA RAILROAD COMPANY.

*Carriers—Deterioration of Fruit—Delay in Transportation— Regulation of Temperature—Shipper's Agent in Charge.*

In an action against a carrier on account of negligent delay in the transportation of a shipment of bananas, a prayer which authorized a finding that plaintiff suffered a loss because the shipment did not arrive in time for the market on a particular day was properly refused, the evidence showing that the market price of the fruit on that day was the same as that on the day on which it was sold, after its arrival. p. 5

A carrier is not an insurer of perishable goods, but is only required to use reasonable care and diligence in their transportation. pp. 5, 6

In an action against a carrier for deterioration of carloads of fruit, where the evidence showed that the cars containing the fruit were unloaded from defendant's float in time to be placed in that one of defendant's trains in which they were supposed to go, and that if this train had arrived on scheduled time, no loss would have occurred, it was proper, in a prayer granted defendant, not to refer to any delay by it in having the float with the cars thereon at the place of loading or in moving them to where the cars were to be placed in the train. pp. 6, 7

It being the duty of the carrier to give notice to the shipper of possible delay by reason of abnormal conditions prevailing, defendant's prayer properly referred to such notice and asked for a finding as to whether such notice was given. p. 7

A notice by a carrier to a shipper of possible delay by reason of abnormal conditions prevailing does not excuse the carrier

for a delay which could be avoided, but simply enables the carrier to avail itself of a delay due to an act of God or some other excepted cause.                      ·              p. 7

In an action against a carrier on account of deterioration of carloads of fruit, a prayer that plaintiff could not recover on account of the premature ripening of the fruit, if this was caused by failure of plaintiff's agent, who was sent in charge of the shipment, to regulate the temperature of the cars so as to prevent such ripening, *held* proper, although it did not require the jury to find that the agent's negligence was the "proximate" cause of the damage, and failed to negative the existence of any concurring negligence on the part of the carrier.     pp. 7, 8

While the shipper is under no obligation to send an agent in charge of the shipment, yet if he does so he is responsible for any loss occasioned by his agent's neglect of duty, at least in the absence of a showing that the carrier knew of such negligence.                                       pp. 8, 9

*Decided June 30th, 1925.*

Appeal from the Baltimore City Court (ULMAN, J.).

Action by the Atlantic Fruit Company against the Pennsylvania Railroad Company. From a judgment for defendant, plaintiff appeals. Affirmed.

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, PARKE, and WALSH, JJ.

*Addison E. Mullikin,* with whom were *Mullikin & Porter* on the brief, for the appellant.

*Charles H. Carter,* with whom were *Bernard Carter & Sons* on the brief, for the appellee.

WALSH, J., delivered the opinion of the Court.

On the morning of January 24th, 1923, the Atlantic Fruit Company, hereinafter called the plaintiff, asked the Pennsyl-

vania Railroad Company, hereinafter called the defendant, to send a float at 1.00 P. M. that day to a steamer in New York harbor for the purpose of getting five carloads of bananas from the steamer and transporting them to the plaintiff's Pratt Street pier in Baltimore City. The float, with the cars on it, reached the ship's side at 3.10 P. M. that same day, the bananas were loaded into the cars by 5.00 P. M., and at 5.10 P. M. the plaintiff notified the defendant that the float would be ready to tow at 7.00 P. M. At 5.50 P. M. the plaintiff delivered the bills of lading for the shipment to the defendant, and at 7.00 P. M. the defendant returned them stamped as follows:

"Abnormal conditions prevail on the lines of carrier which will handle this shipment, and it is subject to delay. This advice is given to the owner of the property covered by this contract, in order that he may have due notice of the fact."

They were also marked "Messenger in charge."

The plaintiff accepted the bills of lading thus stamped, and at 7.55 P. M. the float was taken from the ship's side and towed to the freight terminal of the defendant at Harsimus Cove, where it arrived about 9.00 P. M., and at 10.10 P. M. it was signalled into the float bridge to be unloaded, and by 10.50 P. M. all the cars on the float had been taken off and placed in the freight yard of the defendant. The five cars were placed in a train known as M. D. 11, which train was scheduled to leave Harsimus Cove at 1.00 A. M. and seems to have been made up largely of perishable freight consigned to points south of New York. Under normal conditions the plaintiff's five cars, leaving in this train on scheduled time, would have reached Baltimore from fourteen to sixteen hours later, that is, between 3.00 and 5.00 P. M. on January 25th, but on this occasion the train did not leave the freight yard until 1.00 P. M. on the 25th, and the five cars in question did not reach the Pratt Street pier in Baltimore until 5.55 P. M. on January 26th, which was twenty-five to twenty-seven hours late.

The explanation of this delay given by the defendant was that about 5.00 P. M. on January 24th, 1923, it began to experience difficulty in handling its float operations in Harsimus Cove because of the presence of ice in the cove, and the consequent packing of this ice beneath the float bridges, that this difficulty increased during the evening, and that as a result of it the entire movement of freight in the yard that night was disarranged and all freight trains were delayed. It also offered evidence tending to show that after this initial delay on the night of January 24th, it was impossible for the freight trains to move with dispatch on the 25th, because such movement would have interfered with the regular passenger movement maintained during the day, and there was further evidence that the defendant under the circumstances used reasonable care and diligence in forwarding the cars of the plaintiff to their destination. The evidence of the plaintiff showed that the bananas were in "good green condition" when loaded in the cars, that the cars were properly heated, that the bananas would have been in good condition had they reached Baltimore on the afternoon of January 25th, the scheduled time of arrival, and could have been sold at the prevailing market price on the morning of the 26th had they arrived on time. Its testimony further showed that when the bananas arrived on the evening of the 26th more than 50 per cent. of them were ripe, and the balance were turning, that they were sold the following morning at auction in accordance with the custom of the trade, that they brought approximately two thousand dollars less than they would have brought had they been in good condition, and that the market price on the 25th and 26th was the same. It further appeared that the plaintiff sent a messenger with the cars, one Louis Brodie, whose duty it was to see that the cars were properly heated when the fruit was loaded and the shipment started, and whose further duty was to accompany the cars to their destination and to regulate their temperature while in transit by adjusting certain vents and plugs in the cars. The testimony as to whether or not Brodie prop-

erly performed his duty on this particular trip was conflicting, but in our opinion it was sufficient to justify the submission of the question to the jury.

The plaintiff sued the defendant for the loss sustained, alleging it was caused by the failure of the defendant to transport the goods "with safety and due diligence." The case was tried before the court and jury, and the verdict and judgment being for the defendant, the plaintiff appealed.

There is only one exception in the case, and that was taken to the action of the learned court below in refusing to grant the first and second prayers of the plaintiff, and in granting the first and second prayers of the defendant.

The plaintiff's first prayer authorizes a finding that the plaintiff suffered a loss because the cars did not arrive in time for the market on the 26th, and the second prayer likewise includes this item as the sole cause of loss and also in conjunction with damage to the goods. There was no evidence in the case that the market price on the 27th, the day the goods were sold, was any lower than it was on the 26th; in fact the evidence showed that the price was the same on both these days, and there was accordingly no error in rejecting these two prayers.

Before considering the plaintiff's objections to the granted prayers of the defendant it will be well to state some of the legal principles which govern cases of this character.

In *Phila., B. & W. R. Co. v. Diffendal,* 109 Md. 494, 504, 505, this Court said: "The ordinary common law liability of a common carrier as to most commodities committed to its custody for transportation, is that of an insurer against all risks incident to the transportation, save such as result from the act of God or the public enemy, or the fault of the shipper, but with respect to perishable goods, which themselves contain the elements of destruction occasioning their own loss or deterioration, the carrier is not an insurer, but is required to exercise reasonable care and diligence to protect the goods from injury while in its custody as well as to deliver them with dispatch to the consignee or connecting carrier."

And see also *Pennsylvania R. Co. v. Clark*, 118 Md. 514, 518.

"Where, without fault on its part, a carrier is unable to perform a service due and demanded, it must promptly notify the shipper of its inability, otherwise the reception of goods without such notice will estop the carrier from setting up what would otherwise have been a sufficient excuse for refusing to accept the goods or for delay in shipment after they had been received." *Eastern Railway v. Littlefield*, 237 U. S. 140, 145. And to the same effect see *Burns Grain Co. v. Erie*, 185 App. Div. 169, 172 N. Y. Supp. 740, 742; *Di Giorgio v. Penna R. Co.*, 104 Md. 693, 703; 10 C. J. 290, 291.

"While ordinarily a common carrier which receives goods for shipment is required to deliver them according to the agreement, yet, if the owner accompanies them, the carrier is not liable for any injury or loss that may occur through the act of the owner or through any agency that is under his exclusive control. It has frequently been held that if in case of shipment of animals the shipper accompanies them, by arrangement with the carrier, for the purpose of giving them necessary care, the carrier is not liable for loss or injury due to the shipper's own fault, especially where the inherent vice of the animals contributes to the injuries sustained." 10 C. J. 114, 115; *Nunnelee v. St. Louis etc. R. Co.*, 145 Mo. App. 17, 129 S. W. 762; *Adams Express Co. v. Scott*, 113 Va. 1; 4 R. C. L. 995, par. 462.

The goods shipped in this case were perishable, and so, under the rule laid down in the *Diffendal* case, *supra*, the defendant was not an insurer, but was only required to use reasonable care and diligence in transporting them. It was conceded that they actually reached their destination more than a day late, and in a damaged condition, but the defendant contended that this delay was caused by an act of God, namely, by the presence of ice in Harsimus Cove, and in our opinion it properly presented this defense in its first prayer.

The plaintiff objected to this prayer on the ground that it failed to take into account the delay in getting the float to

the ship's side, and the delay in taking it away, and it also
objected to the insertion in the prayer of the carrier's notice
that "abnormal conditions existed on its lines" and the trans-
portation of the goods was subject to delay, but we do not
think either of these objections is sound.    The evidence
showed that the cars were unloaded from the float at Harsi-
mus Cove in time to be placed in train M. D. 11; that this
was the train they were supposed to go in, and that had this
train reached its destination on scheduled time the plaintiff
would have suffered no loss.    Hence the loss was not oc-
casioned by the delay in getting these particular five cars to
the cove, but was, under the defendant's theory, due to the
tie-up of its entire freight movement, and this in turn was
occasioned by the ice in the cove.    There was accordingly no
reason to make any mention in the prayer of the original
delay.    Nor do we find any error in the insertion of the no-
tice in the prayer.    Under the authorities heretofore cited, it
was the duty of the carrier to give such a notice, and so it
was certainly proper to ask the jury to find that the notice
had been given.    Such a notice does not excuse the carrier for
a delay which could be avoided; it simply enables the carrier
to avail itself of a delay which was due to an act of God, or
some other excepted cause.

The defendant also contended that the damage to the goods
was caused by the negligence of the plaintiff's messenger in
not properly regulating the temperature in the cars while
they were in transit, and this defense is presented by the
defendant's second prayer.    This prayer, after setting out
the preliminary facts of loading etc., states that "if the jury
shall find that said ripened condition was caused by the negli-
gent failure of the plaintiff's messenger, Brodie, to regulate
the heat in said cars and shall find that the plaintiff sent
Mr. Brodie in charge of said bananas, and that if the said
Mr. Brodie had used due car during the transportation of
said bananas between New York and Baltimore he would
have so regulated the temperature of said cars, by means of
said vents and plugs, so as to prevent the said bananas from
ripening during the transportation thereof, but that said Mr.

Brodie failed to so regulate the temperature of said cars and prevent the ripening of said bananas, then the plaintiff is not entitled to recover for any damage suffered by said plaintiff because of the ripened or ripening condition of the bananas."

The plaintiff insisted that this prayer was defective because it did not require the jury to find that the negligence of Brodie was the "proximate" cause of the damage to the goods, and because it failed to negative the existence of any concurring negligence on the part of the carrier. These objections might be valid under some circumstances, but we do not consider them valid in this case.

Here it appears that the shipper, with the knowledge and consent of the carrier, sent a messenger with the cars, whose duty it was to regulate the temperature of the cars while in transit, and there is some evidence that this duty was not properly performed, and that had it been properly performed the bananas would have reached Baltimore in good condition, despite the delay. The prayer under consideration instructs the jury that if they find that the loss was occasioned by the negligence of the messenger in not regulating the temperature, and that if he had used due care there would have been no loss, the plaintiff cannot recover. We think this instruction was correct. The carrier knew this messenger was going with the cars for the express purpose of taking care of the plaintiff's goods while they were being transported, and, while the shipper was under no obligation to send a messenger, and the carrier would have been responsible for the proper care of the goods in transit if no messenger accompanied them, we think the better rule holds that, when the shipper places some one in charge of goods, he is responsible for any loss caused by his agent's neglect of duty, at least in the absence of a showing that the carrier knew of such neglect. See Note in *Ann. Cases* 1913D 972; *Hutchinson v. Chicago etc. Ry. Co.*, 37 Minn. 524; *Gillett v. Missouri etc. R. Co.* (Tex. Civ. App.),, 68 S. W. 61; *Texas Cent. R. Co. v. Dorsey*, 30 Tex. Civ. App. 377, 70 S. W. 575; Note in *L. R. A.* 1915D 659 *et seq.; Winn v. American Express Co.*, 149 Iowa, 259, and *Colsch v. Chicago etc. Rwy. Co.*, 149 Iowa, 176; *Elliott on Railroads* (3rd ed.), vol. 4, sec. 2276,

and other authorities, *supra.* If no messenger had gone with these cars the carrier would have had an opportunity to regulate the temperature in the cars when it found there was to be a delay, but with a messenger in charge the carrier would only have been justified in interfering with the cars in the event that it knew the messenger was not properly performing his duties, and there is no evidence of any such knowledge on its part in the present case.

The chief reason for the rule which holds the carrier in ordinary cases to so high a measure of responsibility for loss or damage to goods entrusted to it is found in the fact that in such cases the carrier has exclusive charge of the goods, and has exclusive possession of the evidence by which the manner of their transportation and care can be proved. But in the case under consideration the knowledge of the shipper's messenger was, at least so far as the care of the goods in transit is concerned, superior to that of the carrier. Had there been no messenger, it might, under some circumstances, have been the duty of the carrier to regulate the heat in the cars, after it found that there would be a delay, but with a messenger present who had prepared the cars for shipment and who accompanied them for the express purpose of attending to their temperature while they were in transit, it seems to us that any interference with the cars by the carrier would have been at its own risk, and that it cannot properly be held responsible for a loss which would not have occurred had the messenger used due care in the performance of his duties.

There are perhaps cases in which the negligence of the shipper will not excuse the carrier, and there are cases in which it is necessary to instruct the jury to find that there was no concurring negligence on the part of the carrier, but we are of the opinion that under the facts and circumstances of the present case these questions do not properly arise, and that the instructions given in the defendant's second prayer are correct.

Finding no errors in the rulings appealed from the judgment will be affirmed.

*Judgment affirmed, with costs to the appellee.*