James Edward KELLY, III, M.D. *v.* Michelle Newhause KELLY

99-1359 19 S.W.3d 1

Supreme Court of Arkansas
Opinion delivered June 8, 2000

*Mark Hewett*, Chancellor;

*Warner, Smith & Harris, PLC*, by: *James M. Dunn*, for appellant.

*Annie Powell*, for appellee.

LAVENSKI R. SMITH, Justice. James E. Kelly, III, M.D., appeals a child-support order of the Sebastian County Chancery Court requiring that he pay twenty-five percent of any conditional bonus he receives, in addition to his monthly base-support obligation. Kelly argues that the court's order is contrary to the provisions of Arkansas Supreme Court Administrative Order 10, because it does not set and establish a sum certain dollar amount. We agree and reverse.

### Facts

James Edward Kelly, III, and Michele Newhause Kelly were married on August 8, 1983, in Ontario, Canada. The Kellys lived in Canada for twelve years. While there, James attended medical school and completed his residency. During the course of their marriage, the Kellys had three children. The family moved to Louisville, Kentucky, in 1995 while James obtained additional training in his chosen specialty of plastic surgery. By 1998, the

Kellys had moved to Ft. Smith, believing the economic and environmental conditions there to be advantageous for their family. On March 16, 1998, Michele filed a complaint for separate maintenance in the Sebastian County Chancery Court, alleging general indignities. In August 1998, James accepted an offer to associate with Sparks Foundation. His promised compensation included a base salary of $522,000 and a bonus. The agreement outlined the calculation of the bonus as follows:

> (ii) *Bonus.* Physician shall be entitled to Bonus Compensation in addition to the Base Compensation based on the following:
>
>> The bonus amount shall be fifty percent (50%) of collections above a bonus threshold amount which shall equal physician's base salary plus Practice Site costs. Bonus compensation shall be pro-rated for any partial year. During the term of the Agreement Hospital and Physician will review the on-going practice site expenses as they relate to the calculation of the Bonus Percentage. Adjustments to the Bonus Percentage and Bonus Threshold will be made in accordance wit the actual practice site experience.

James began work for Sparks Foundation in the fall of 1998. On December 4, 1998, Michele amended her complaint to state a cause of action for absolute divorce. Following discovery, the court set the matter for hearing on August 6, 1999. When the matter was called, the parties announced that they had negotiated and executed a property-settlement agreement resolving all marital property issues. However, the parties agreed to submit to the court the issue of whether James should be ordered to pay an additional amount of child support based upon the bonus he could receive under his contract. James testified that he had not received a bonus, and was unsure when a bonus might be paid or how much it might be. He indicated that the uncertainty came from the nature of the calculation formula, which included the business costs associated with his practice. He believed those costs would include the startup costs for the practice, and that it would take an indefinite amount of time to build a practice. At the conclusion of the hearing, the chancellor granted Michele an absolute divorce and set child support in the amount of $6,000 per month consistent with the parties' property-settlement agreement. The court also awarded additional child support in the amount of twenty-five percent of the net of any bonus that James receives. The chancellor entered the divorce decree on

August 25, 1999. The chancellor also conducted an additional hearing on James' motion for new trial on September 13, 1999. The court denied the motion.

## Standard of Review

 We review chancery cases de novo on the record, and we will not reverse a finding of fact by the chancery court unless it is clearly erroneous. Ark. R. Civ. P. 52(a); *Myrick v. Myrick*, 339 Ark. 1, 2 S.W.3d 60 (1999). In reviewing a chancery court's findings, we give due deference to that court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Hunt v. Hunt*, 340 Ark. 173, 8 S.W.3d 525. As a rule, when the amount of child support is at issue, we will not reverse the chancellor absent an abuse of discretion. *Scroggins v. Scroggins*, 302 Ark. 362, 790 S.W.2d 157 (1990). However, a chancellor's conclusion of law is given no deference on appeal. *City of Lowell v. M & N Mobile Home Park Inc.*, 325 Ark. 332, 916 S.W.2d 95 (1996).

## Administrative Order #10

 At the time of a divorce, with respect to child support, the chancellor is obligated to make such orders as are reasonable based upon the circumstances of the parties and the nature of the case. Ark. Code Ann. § 9-12-312. In making its order, the court must make specific reference to the family-support chart. The family-support chart is more accurately identified as Section VII of Supreme Court Administrative Rule 10.[1] First adopted in 1990 in response to federal law, Administrative Order Number 10 sets out the definition of income for child-support purposes, the manner of calculation of support, requires parties to execute an affidavit of financial means, and lists factors the court should consider when determining support at variance to the chart. Although the court must consider the chart, it does not have to use the chart amount if the circumstances of the parties indicate another amount would be appropriate. *Stewart v. Winfrey*, 308 Ark. 277, 824 S.W.2d 373 (1992); *see also*, Ark. Code Ann § 9-14-106 (1998).

---

[1] *See In Re Administrative Order Number 10*, 329 Ark. 668 (1997).

At issue in the instant case, is SECTION III (b), which concerns calculation of support payments where the payor's income exceeds the chart. It provides that in those cases the court should use specific percentages of the payor's weekly or monthly income *"to set and establish a sum certain dollar amount of support."* SECTION III (b) specifies twenty-five percent as the appropriate percentage for two dependents. In setting support for the children, the chancellor below used the twenty-five percent as the factor, and awarded Michele twenty-five percent of James's bonus income in addition to $6,000 per month from his salary. It is undisputed that the bonus income is income for child-support purposes under the definition of income contained in Administrative Order Number 10. However, James challenges the court's ability to presently order payments based upon indefinite, conditional income. Specifically, he contends that the court cannot "set and establish a sum certain dollar amount of support" where the receipt of the bonus is contingent upon the profitability of the clinic and the amount, if any, cannot presently be determined. We agree and reverse.

■ The trial court found SECTION III(b) to be somewhat ambiguous, in that it required an order of a sum certain on bonuses, which by their nature are typically uncertain as to amount until paid. We disagree. We do not consider the language of the section to be ambiguous. Calculating support from bonus income, like other forms of income, should be based upon a proper showing of past earnings and demonstrated future ability. For instance, with regard to self-employed payors, support is calculated based upon the previous year's federal and state income-tax returns and the quarterly estimates for the current year. Also, the court shall consider the amount the payor is capable of earning, or a net worth approach based upon property, life-style, etc. Administrative Order Number 10 SECTION III (c). Here, there is no history of bonus income, and the trial court acknowledged the uncertainty of whether James would even qualify for a bonus in the foreseeable future given the business-expense calculation that would be required. We therefore reverse and remand for entry of an order consistent with this opinion.

Reversed and remanded.