Carrie L. SOUTHERLAND *v.*
John R. SOUTHERLAND, Jr.

CA 01-492                                                58 S.W.3d 867

Court of Appeals of Arkansas
Division II
Opinion delivered November 7, 2001

*Hilburn, Calhoon, Harper, Pruniski & Calhoun, Ltd.*, by: *Sam Hilburn* and *Susan M. Coleman*, for appellant.

*Janice W. Vaughn*, for appellee.

JOHN F. STROUD, JR., Chief Judge. Appellant, Carrie Southerland, and appellee, John Southerland, were divorced on February 2, 1999. The divorce decree provided that appellee, in addition to a weekly stated amount, was also to pay to appellant as child support fifteen percent of the net of any bonuses that he received. On July 10, 2000, appellant filed a Motion to Enforce Decree, followed by an amended motion. Appellant's motions were prompted by a lump-sum payment that appellee received in connection with a stock-option agreement with his employer. At the time of the divorce both parties worked for the same company, United Medical, Inc. Each had his/her own stock-option agreement that had not yet vested; each considered the stock-option agreements to be worthless; and each merely kept his/her own stock-option agreement and did not pursue their division as marital

assets. Following the divorce, however, a larger company, Len Care, Inc., became interested in buying United Medical, the company with which the parties had their stock-option agreements. As a part of the negotiated sale of the business, employees who had stock-option agreements were paid lump sums that, in effect, gave them the same amount of money that they would have received if they had actually owned stock in the company. In order to receive the funds, however, they had to sign a new covenant not to compete. Appellant and appellee signed the non-compete agreements and received lump-sum payments in accordance with the formula applicable to the specific stock-option agreement. Appellee received $118,750, and appellant received $43,905.

The trial court determined that the lump-sum payment that appellee received in connection with his stock-option agreement was not a bonus for child-support purposes under the divorce decree; that the court had not anticipated that the fifteen percent bonus provision of the decree would be "applied to any other lump sum passive payment such as what occurred in this instance"; that the parties received money from Len Care based upon their stock-option agreements and also in exchange for value received, i.e., the covenants not to compete; and that the court would have had to speculate as to the value of the covenant not to compete because there was no evidence presented to establish that value. Consequently, the trial court denied appellant's motion to enforce. For her sole point of appeal, appellant contends that "the trial court erred by failing to classify the $118,750 received by the appellee from his employer as a bonus for child support purposes." We disagree and affirm.

Appellee testified that he entered into an employment agreement with United Medical when he started to work for them; that he was granted a stock-option agreement as part of his employment; that appellant, his wife at that time, also worked for United; and that she, too, received a stock-option agreement that was offered only to key employees. He said that he and appellant were still working for United at the time of their divorce. He stated that under the agreement, he would not have a stock option until he had worked there for three years, and that he had not been there for three years when the company sold. He explained that the United CFO said, "We are accelerating everyone that was given a stock option agreement[,]" and that he "got a piece of paper saying that your options are being accelerated and fully vested," but that he never had a piece of paper that said, "stock option." He stated that he was subsequently paid pursuant to that particular agreement; that

the amount paid was the difference between the option price and the market price; that he received a separate check for $118,775; and that no taxes were deducted. Appellee further testified that he received two or three bonuses for the year 2000, and that he paid the additional fifteen percent child support with respect to those bonuses.

Mr. Michael Johnson, the attorney who represented United Medical when it was acquired by Len Care, also testified. He stated that in 1996 or 1997, United Medical adopted a qualified stock-option plan whereby certain key employees were entitled to receive stock options subject to a vesting period; that when United Medical decided to sell to Len Care, none of the options had vested, meaning that the options terminated and the company had no obligation to do anything. He stated, however, that management decided that the fair thing to do was to give those employees a cash payment in lieu of the stock options they would have received if the options had vested; and that, in effect, those employees received the same price per share that the other shareholders received even though they did not actually own stock. He also testified that the whole transaction revolved around tax issues and that the payment would be classified as ordinary income to the employees. He stated that the parties never tendered any stock to the company; that the payment was strictly classified as a bonus; and that he did not know of any tax attorney or accountant that would classify the payment as anything other than ordinary income. He also testified, however, that he was not sure if this was basically an acceleration of the stock options, even though the company did not treat it as such; and that he tries not to give tax advice.

Appellee stated that the value of the stock as of December 1998, the period selected by the parties for valuation, was $15.66 per share, and that the price for the option was $15.77, giving it a negative value. He stated that the stock-option agreements were discussed during the divorce, and that it was decided that each party would keep their respective shares because of the zero value.

Appellant characterizes the issue involved in this appeal as "whether a lump sum payment based on a formula received from a stock option agreement should be classified as *income* for child support purposes." In making her argument, she relies upon Supreme Court Administrative Rule Number 10, which provides:

> Income means any form of payment, periodic or otherwise, due to an individual, regardless of source, including wages, salaries,

commissions, bonuses, worker's compensation, disability, payments pursuant to a pension or retirement program, and interest less proper deductions. . . .

She also cites the cases of *Kelly v. Kelly*, 341 Ark. 596, 19 S.W.3d 1 (2000) (holding that the trial court cannot set and establish a sum certain amount of support where the receipt of a bonus is contingent upon the profitability of a business), and *Rowlett v. Bunton*, 68 Ark. App. 228, 6 S.W.3d 372 (1999) and *Halter v. Halter*, 60 Ark. App. 189, 959 S.W.2d 761 (1998) (holding that an inheritance cannot be considered as income for child-support purposes). Obviously, these cases, in and of themselves, do not support appellant's position. Rather, she relies upon them as support for her position by distinguishing them from the facts involved here. That is, she notes that *Kelly* is distinguishable because, here, appellee had already received his lump-sum payment, and there were no contingencies. She implicitly distinguishes *Rowlett* and *Halter* in that the instant case does not involve an inheritance.

Appellant's cited authority and her argument are simply not convincing. Even if the stock-option agreements ceased to be of value in accordance with their original terms, the subsequent sale of the business boosted their value. Only the key employees that possessed the agreements received a lump-sum payment from Len Care, and the payment was clearly tied to the stock-option agreements and calculated as if those employees held shares. Moreover, there was testimony that Len Care would not have written the checks if these employees had not also signed a new covenant not to compete. We recognize that Mr. Johnson testified that he regarded the payment as income and that he doesn't know of any tax attorney or accountant that would classify it as anything other than ordinary income. However, in our opinion, with respect to this issue involved in this case, the stock-option agreement was more akin to a marital asset that increased in value after the divorce, than bonus income that would be subject to the fifteen percent child-support provision in the divorce decree. As with any marital property that increases in value after a divorce is final, the parties cannot come back and claim a portion of the increased value. Consequently, based upon the unique facts of this case, we hold that the trial court was correct in finding that the money was not a bonus for child-support purposes.

Affirmed.

PITTMAN and GRIFFEN, JJ., agree.