833 A.2d 46

**Robert JOHNSON**

v.

**Ann JOHNSON.**

No. 2049, Sept. Term, 2002.

Court of Special Appeals of Maryland.

Oct. 3, 2003.

---

**11.** Doing so moots Staton's constitutional due process and *ex post facto* challenges.

Jack J. Shapiro, Baltimore, for appellant.

William R. Levasseur, Jr., Towson, for appellee.

Argued before SALMON, KENNEY, and CHARLES E. MOYLAN, JR. (Ret., Specially Assigned), JJ.

SALMON, J.

Robert and Ann Johnson are the parents of three minor children. By a judgment of absolute divorce dated October 7, 2002, the Circuit Court for Baltimore County dissolved the Johnsons' marriage and awarded custody of the three children to Mrs. Johnson. The court required Mr. Johnson to pay $1,860 per month in child support. The trial judge arrived at

the child support amount, *inter alia*, by determining that Mr. Johnson's 2002 earnings would be $122,900.

In 2002, Mr. Johnson's base salary was $80,000, but in addition he had dividend income of $1,500, plus a taxable bonus of $30,000 and a non-taxable "pension bonus" of $11,400.

Mr. Johnson filed this timely appeal and raises two questions:

1. Did the trial court err in failing to incorporate into the judgment of absolute divorce the parties' July 10, 2002, agreement in which the Johnsons agreed that child support should be calculated under the child support guidelines by using $90,000 as Mr. Johnson's annual salary?

2. Did the court err or abuse its discretion by including the full amount of Mr. Johnson's bonus income arising from his first year of employment as part of his actual income for child support purposes?

## I. *EVIDENCE PRESENTED AT THE HEARING TO DETERMINE CHILD SUPPORT*

### A. *Undisputed Facts*

Robert and Ann Johnson's three children are Katherine, born May 28, 1988, and twins, Thomas and Nicholas, born January 13, 1991. The parties separated on February 13, 1997, and on that same date entered into a separation and marital property settlement agreement in which it was agreed that Mrs. Johnson was to have custody of the children and that Mr. Johnson would pay $1,250 per month to her as child support.

Until 2000, Mr. Johnson worked for Robert H. Johnson & Associates, a corporation he owned.

Mr. Johnson commenced employment with AGM Financial Services, Inc. ("AGM"), on November 15, 2000, as an underwriter. His initial base salary was $75,000 per year. Bonuses, if any, were to be paid depending on (1) the profitability of AGM; (2) his job performance; and (3) the discretion of

AGM's owner. At AGM, all bonuses are usually paid in February and are based on the prior year's performance.

According to his federal tax returns, Mr. Johnson's annual earnings between 1997 and 2001 were:

| | |
|------|-----------|
| 1997 | $ 95,726 |
| 1998 | $ 68,675 |
| 1999 | $102,333 |
| 2000 | $ 90,223 |
| 2001 | $116,295 |

In 2002, Mr. Johnson received a $5,000 raise in his base salary. In addition, he received in February 2002 an incentive bonus of $30,000 and a "pension bonus" of $11,400, for a total 2002 bonus of $41,400. The bonuses were a reward for work performed for AGM in 2001.

Mrs. Johnson is employed by Martin & Levasseur as a legal secretary. Her annual income in 2002 was $28,000.

The parties modified their child support agreement on July 10, 2002, by an addendum. The addendum provided:

2.A. **BASE CHILD SUPPORT** At the time of this Agreement Father's gross monthly income is $7,500.00; Mother's gross income is $2,333.00. Father provides health insurance for the children through his employment but currently is assessed no charge or wage deduction for those medical health benefits. For reasons set forth in the paragraphs that follow, the parties have determined that it is in the best interest of the children for work-related childcare expenses and other child related expenditures not to be included in the [child support] guidelines. Accordingly, accounting from July 1, 2002, Father shall pay unto Mother the sum of $1,534.00 as base child support. Consistent with the provisions of the original Agreement dated February 13, 1997, and as permitted under the terms of the Revocable Trust Agreement of Robert H. Johnson dated July 30, 1997 (Section 2.C), the child support may be paid in its entirety from said trust at the direction and discretion of the Trustees

thereunder.[1] Whatever payment method is employed, Father's payment shall be paid to Mother no later than the first day of each month commencing with July 1, 2002 and every month thereafter.

At the time the addendum was signed, Mrs. Johnson was unaware that her spouse had already received a $41,400 bonus in 2002.

The Johnsons' gross monthly incomes as represented in the amended agreement translated into annual incomes of $90,000 and $28,000, respectively. Because Mrs. Johnson (purportedly) earned 23.73% of the combined gross income, the agreement required Mr. Johnson to pay 76.27% of the child-related expenses and Mrs. Johnson to pay the remaining 23.73%.

Mrs. Johnson, in August 2002, first became aware that Mr. Johnson had received a $41,400 bonus six months earlier.

### B. *Testimony of Mr. Johnson*

In negotiating the addendum to the agreement, Mr. Johnson used the income figure of $7,500 per month ($90,000 annually) because he hoped for a future average bonus of $10,000 annually. He gave no indication as to how he arrived at the $10,000 per year estimate, nor did he say how much he anticipated receiving as a bonus for 2003. Nevertheless, if the court did not accept his estimate of an average bonus of $10,000 per year, Mr. Johnson testified that he wanted the court to use only his $80,000 base salary in calculating his child support obligations.

Mr. Johnson's excuse for failing to disclose his 2002 bonus to Mrs. Johnson was that his bonus was not guaranteed for the future.

### II.

Appellant argues that the July 10, 2002, addendum was in the best interest of the children, and therefore, the trial judge

---

1. The trust mentioned in the amended agreement was set up by Mr. Johnson from the sale of some real property he owned.

erred in failing to incorporate the addendum into the judgment of divorce. In support of this argument, appellant contends: (1) based upon the circumstances of this case, a correct calculation of what he owed under the guidelines would result in the court assuming he earned only $80,000 per year, plus $1,500 in dividends; (2) because the calculation should be based on the $81,500 assumption, a "proper" guidelines calculation would result in his paying less money in child support than the amount he agreed to pay; and (3) it would be in the best interest of the children if child support were based on the higher amount agreed upon than the lower (albeit proper) amount required by the application of the guidelines.

As can be seen, whether appellant's argument has merit depends entirely on the validity of his major premise, i.e., that under the guidelines his $41,400 bonus should not have been considered. As will be shown in part III, *infra,* Mr. Johnson's major premise fails.

## III.

■ Trial judges are obligated to use the child support guidelines to establish the amount of child support when the parties' combined monthly income is $10,000 or less. MD.CODE ANN., FAM. LAW ("FL") § 12–202 (2002); *Smith v. Freeman,* 149 Md.App. 1, 19, 814 A.2d 65 (2002). When the income of the parties is above the $10,000 per month threshold, the trial judge may use discretion in establishing child support. FL § 12–204(d). *See also Smith,* 149 Md.App. at 19, 814 A.2d 65. The *Smith* Court explained:

When the chancellor exercises discretion with respect to child support in an above Guidelines case, he or she "must balance the best interests and needs of the child with the parent's financial ability to meet those needs." *Unkle v. Unkle,* 305 Md. 587, 597, 505 A.2d 849 (1986); *see Collins [v. Collins],* 144 Md.App. [395,] 443, 798 A.2d 1155 [(2002)]. Several factors are relevant in setting child support in an above Guidelines case. They include the parties' financial circumstances, *Unkle,* 305 Md. at 597, 505 A.2d 849, the

"reasonable expenses of the child," *Voishan* [*v. Palma*], 327 Md. [318,] 332, 609 A.2d 319 [(2002)], and the parties' " 'station in life, their age and physical condition, and expenses in educating the child [ ].' " *Id.* at 329, 609 A.2d 319 (citation omitted). We will not disturb the trial court's discretionary determination as to an appropriate award of child support absent legal error or abuse of discretion. *Ware v. Ware*, 131 Md.App. 207, 240, 748 A.2d 1031 (2000). *Id.* at 120, 814 A.2d 65. Whether this is an "over guideline" case depends upon whether Mr. Johnson's $41,400 bonus was properly considered part of his annual income.

The methodology utilized in calculating child support was: The court determined that Mrs. Johnson earned $28,000 and Mr. Johnson earned $122,900 per year. That latter figure was calculated by determining the sum of the three figures: base salary—$80,000; dividends—$1,500; bonus—$41,400. Total yearly income for both spouses was $150,900—or $12,575 monthly. Under the guidelines, the maximum monetary guideline child support for parents who earn $10,000 per month and have three minor children is $2,026. Because the parties earned $2,575 per month more than the $10,000 guideline maximum, the court increased the total child support obligation by 10% of $2,575.00. This meant the total obligation was $2,283.50 ($2,026 + 257.50) of which Mr. Johnson was to pay 81.45% or $1,860.

Appellant's only criticism of the above methodology is the inclusion of the $41,400 bonus into the formula.

Maryland law is clear that, "[w]hen a court calculates a parent's financial obligations under the child support guidelines, the central factual issue is the 'actual adjusted income' of each party, and the court must consider the 'actual income of a parent, if the parent is employed to full capacity,' . . . ." *Reuter v. Reuter*, 102 Md.App. 212, 221, 649 A.2d 24 (1994) (quoting FL § 12–201(b)(1)). The term "actual income" includes "bonuses." *See* FL § 12–201(3)(iv).

Despite the clear language of the statute, Mr. Johnson contends that the court erred in including his bonus as part of

his "actual income." Appellant contends that bonuses such as the one he received in 2002 should be disregarded in all "above guideline cases" and in all cases where the parental incomes are less than $10,000 per month. According to appellant, his bonus should have been disregarded because it is too speculative as to what bonus, if any, he will receive in the future. In support of this position, Mr. Johnson relies on *Kelly v. Kelly*, 341 Ark. 596, 19 S.W.3d 1 (2000), and *Brown v. Brown*, 119 Md.App. 289, 705 A.2d 7 (1998).

The defendant in *Kelly*, James E. Kelly, III, M.D., accepted a job paying $522,000 annually plus a bonus. 19 S.W.3d at 2. His bonus was based on a complicated formula, *viz:*

"The bonus amount shall be fifty percent (50%) of collections above a bonus threshold amount which shall equal physician's base salary plus Practice Site costs. Bonus compensation shall be pro-rated for any partial year. During the term of the Agreement Hospital and Physician will review the on-going practice site expenses as they relate to the calculation of the Bonus Percentage. Adjustments to the Bonus Percentage and Bonus Threshold will be made in accordance with the actual practice site experience".

*Id.* at 3. (Quoting Dr.Kelly's agreement with his employer). After the parties separated, Mrs. Kelly filed for divorce and asked for child support based on Dr. Kelly's salary plus bonus. *Id.* Ultimately, the Kellys agreed that Dr. Kelly would pay $6,000 per month child support. *Id.* The parties, however, asked the court to resolve the issue of what additional child support, if any, Mrs. Kelly should receive from Dr. Kelly's annual bonus. *Id.* At trial, Dr. Kelly

testified that he had not received a bonus, and was unsure when a bonus might be paid or how much it might be. He indicated that the uncertainty came from the nature of the calculation formula, which included the business costs associated with his practice. He believed those costs would include the startup costs for practice, and that it would take an indefinite amount of time to build a practice.

*Id.*

The chancellor set Dr. Kelly's child support at $6,000 per month *plus* 25% of the net of any bonus he received. *Id.* The

Supreme Court of Arkansas reversed because the court's child support order violated an Administrative Order in that it did not "establish a sum certain dollar amount." *Id.* at 4.

In Arkansas, child support orders are governed by Section VII of Administrative Rule 10. *Id.* Under Rule 10, bonuses are considered income.

The Arkansas Supreme Court said in *Kelly:*

Calculating support from bonus income, like other forms of income, should be based upon a proper showing of past earnings and demonstrated future ability. For instance, with regard to self-employed payors, support is calculated based upon the previous year's federal and state income-tax returns and the quarterly estimates for the current year. Also, the court shall consider the amount the payor is capable of earning, or a net worth approach based upon property, life-style, etc. Administrative Order Number 10, § III(c). *Here, there is no history of bonus income, and the trial court acknowledged the uncertainty of whether [Dr. Kelly] would even qualify for a bonus* in the foreseeable future given the business-expense calculation that would be required. We therefore reverse and remand for entry of an order consistent with this opinion.

*Id.* (emphasis added).

The *Kelly* case is the only precedent cited by the parties dealing with the treatment of bonuses in calculating child support. *But see In re Marriage of Ostler & Smith,* 223 Cal.App.3d 33, 272 Cal.Rptr. 560, 572 (1990)(finding that, under California law, if guidelines are used to calculate child support, bonuses must be included in parent's gross income); *Thompson v. Thompson,* 696 N.E.2d 80, 84 (Ind.Ct.App.1998)(holding that trial judge has discretion to not include bonuses as part of gross income if he or she determines that the bonus income is not dependable or would place a hardship on a parent).

*Kelly* is clearly distinguishable from the case at hand. Here, unlike the situation in *Kelly,* the appellant had already pocketed the bonus at the point when child support was calculated. As a consequence, when child support was set,

there was no doubt that in the year 2002 Mr. Johnson's actual income was $122,900.

The other case relied upon by appellant, *Brown v. Brown*, 119 Md.App. 289, 705 A.2d 7 (1998), dealt with the issue of whether "money earned by working overtime constitutes 'actual income' for purposes of determining child support payments under ... [FL] § 12–201(c)...." *Id.* at 290, 705 A.2d 7. Although the definition of "actual income" as set forth in FL section 12–201(c) did not specifically include overtime pay in its definition, the *Brown* Court concluded that, by implication, overtime pay was included. *Id.* at 293–94, 705 A.2d 7. The Court said:

> "The proper starting point in the interpretations of any statute is the plain language of the statute itself." *Tapscott v. State*, 343 Md. 650, 657, 684 A.2d 439, 442 (1996). Since overtime pay constitutes "compensation due to an employee for employment," it is clearly "wages" under § 12–201(c)(3) of the Family Law Article. Therefore, overtime pay is to be considered as actual income when a court fashions an appropriate award of child support.
>
>        \*      \*      \*

Decisions that bring overtime pay into child support calculations stress that this additional income must not be speculative or uncertain. Rather, the overtime must be a regular part of the parent's employment. *See,* "Consideration of Obligated Spouse's Earnings from Overtime or 'Second Job' Held in Addition to Regular Full–Time Employment in Fixing Alimony or Child Support Awards," 17 A.L.R.5th 143, § 3 (1994); [*State ex rel.*] *Smith v. Smith*, 631 So.2d [252,] 255 [(Ala.Civ.App.1993)](trial court abused its discretion "in determining the father's child support obligation without considering his substantial and continuing 'overtime' income, which based upon the evidence in this case is neither speculative nor uncertain."); *In re Marriage of Brown*, 487 N.W.2d [331,] 334 [(Iowa 1992)] ("Larry's overtime has been consistent, will be consistent, and is somewhat voluntary. His overtime pay is not an anomaly

or speculative."); *Justis v. Justis,* 384 N.W.2d 885, 890–91 (Minn.App.1986) (father's "overtime has been a regular, steady source of income for the past several years."); *Rexroad v. Rexroad,* [186 W.Va. 696,] 414 S.E.2d [457,] 459 [(1992)]("Other jurisdictions that have had occasion to consider overtime pay have concluded that where it is obtained with some degree of regularity, it should be considered in determining the total employment earnings for purposes of both alimony and child support.").

Appellee in the case now before us has consistently worked substantial overtime for more than seven years. Even before he and his wife separated, he averaged 50 hours a week on the job. Therefore, his current overtime income, averaged on a monthly basis, is to be considered when calculating his child support obligation. If circumstances change, and Appellee no longer earns at the level he has over the years, he can seek a modification of the court's order.

*Id.* at 294–95, 705 A.2d 7.

Appellant contends that "bonus income and overtime pay stand generally on the same legal footing," and, therefore, a bonus cannot be used in calculating actual income if the future amount of the bonus is speculative or uncertain. Appellant cites no authority for the proposition that overtime pay and bonuses stand on "the same legal footing." In our view, the "legal footing" of overtime pay and bonuses is not the same. For starters, the General Assembly, in enacting FL section 12–201(c)(3)(iv), has said, without equivocation, that bonuses constitute "actual income." Second, overtime pay is an entitlement, whereas bonuses are normally paid as a matter of discretion. Whether a bonus will be paid and, if so, its amount, are almost always speculative.

Because it is nearly always impossible to predict the amount of future bonuses, if we were to adopt appellant's position and hold that bonuses (already paid) should be disregarded when calculating child support when the amount of bonuses in future years cannot be predicted with reasonable

certainty, we would not be giving effect to the language of FL § 12–201(c)(3)(iv). "[A] reviewing court will not presume that the General Assembly, in enacting a statute, intended to create an ineffective or invalid law." *Shrivastava v. Mates,* 93 Md.App. 320, 335, 612 A.2d 313 (1992) (citing *First Nat'l Bank of Maryland v. Shpritz,* 63 Md.App. 623, 493 A.2d 410 (1985)). Parents who receive large bonuses would receive a huge advantage over parents who earn the same amount but receive the money as part of their base salary.

In the case *sub judice,* adoption of appellant's position would produce an absurd result. It would require the court to engage in the fiction that appellant earned $81,500 annually when, in fact, he received over fifty percent more. And, such a result would violate a basic principle, *viz:* a "child is entitled to a standard of living that corresponds to the economic position of the parents." *Smith,* 149 Md.App. at 23, 814 A.2d 65.

Appellant stresses the fact that he might not receive any bonus in 2003. This is, of course, possible. But, since his employer determines what, if any bonuses are to be paid in February of each year,[2] it is a problem that is easily remedied. If his bonus is significantly less than $41,400 for 2003, he can petition the court for a child support modification. *See Moore v. Tseronis,* 106 Md.App. 275, 281, 664 A.2d 427 (1995).[3]

---

**2.** Because bonuses at AGM are paid in February, and because this case was argued in September 2003, appellant presently knows whether his bonus in 2003 equaled or exceeded that paid for 2002. When appellant's counsel was asked at oral argument whether the bonus for 2003 was as great as the one for 2002, he said he did not know. It seems likely that if the 2003 bonus was significantly less than that received in 2002, appellant's counsel would have been promptly informed of any injustice of the current child support order.

**3.** A possible solution to the problem of the uncertainty of future bonus payments has been suggested. Some states, such as Indiana, specifically allow the court to order the non-custodial parent to pay a fixed percentage of any future bonuses when received. *See Thompson v. Thompson,* 696 N.E.2d 80 (Ind.Ct.App.1998). In Indiana, the Child Support Guideline Rules (Guide 3, A, 1) define "weekly gross income" as including "bonuses." Commentary 2(b) to those rules provides:

In child support cases, it is oftentimes necessary to calculate child support based on currently existing circumstances, even though the Court and the parties are fully aware that there is a significant possibility that in the future conditions might change. The case of *Smith v. Freeman, supra,* which involved a request for an increase in child support based on a huge raise in the non-custodial parent's salary, provides an example. Antonio Freeman, a member of the Green Bay Packers football team, earned $258,000 per month ($3,096,000 annually). 149 Md. at 6, 130 A. 63. His employment contract provided

Overtime, Commissions, Bonuses and Other Forms of Irregular Income. There are numerous forms of income that are irregular or nonguaranteed, which cause difficulty in accurately determining the gross income of a party. Overtime, commissions, bonuses, periodic partnership distributions, voluntary extra work and extra hours worked by a professional are all illustrations, but far from an all-inclusive list, of such items. Each is includable in the total income approach taken by the Guidelines, but each is also very fact-sensitive. Each of the above items is sensitive to downturns in the economy. The fact that overtime, for example, has been consistent for three (3) years does not guarantee that it will continue in a poor economy. Further, it is not the intent of the Guidelines to require a party who has worked sixty (60) hour weeks to continue doing so indefinitely just to meet a support obligation that is based on that higher level of earnings. Care should be taken to set support based on dependable income, while at the same time providing children with the support of which they are entitled.

When the court determines that it is not appropriate to include irregular income in the determination of the child support obligation, the court should express its reasons. When the court determines that it is appropriate to include irregular income, *an equitable method of treating such income may be to require the obligor to pay a fixed percentage of overtime, bonuses, etc., in child support on a periodic but predetermined basis (weekly, bi-weekly, monthly, quarterly) rather than by the process of determining the average of the irregular income by past history and including it in the obligor's gross income calculation.* (Emphasis added.)

Mr. Johnson did not ask the court to order that fixed percentage of future bonuses be paid. In any event, we note that ordering the payment of a fixed percentage of future bonuses might present serious problems in cases where the collection is to be made by the Office of Child Support Enforcement ("OCSE")—due to the uncertainty as to the exact dollar figure to be collected. In cases not involving the OCSE, we see no reason why the chancellor, in the exercise of his/her discretion, could not order a fixed percentage payment on an "if, as, and when" basis.

that if he got hurt or did not perform satisfactorily his salary would be reduced to $83,333 per month. *Id.* Obviously, the court could not say with reasonable certainty what Freeman would earn in future years because neither injuries nor performance can be foreseen. Nevertheless, we held in *Freeman* that child support should be calculated based on the parent's *current* income. *Id.* at 35, 814 A.2d 65. Judge Hollander, for this Court, said:

> In fashioning its decision, the court was also concerned that, because of the nature and unpredictability of appellee's career, appellee's current wealth may be short lived. Given that uncertainty, the court decided to allow appellee to retain most of his money for the proverbial rainy day.
>
> Although appellee has a limited career expectancy, we do not believe that it is appropriate for a court to make a child support determination on the basis of events that have not yet occurred. Life is, after all, full of uncertainty. Further, the court's reasoning conflicts with the principle that a child is entitled to a level of support commensurate with the parents' economic position. As appellant observes, it is "precisely because the father's long range earning potential ... is comparatively short, that there is ... more justification for presently setting aside substantial funds for child support." Put another way, given that appellee's resources may, indeed, diminish in the future, it is appropriate for the court to allow the child to share the father's wealth while it exists.

*Id.* at 34–35, 814 A.2d 65.

By parity of reasoning, bonuses already paid to a parent should be used to calculate child support even though it is unknown whether such a bonus will be paid in the future.

**JUDGMENT AFFIRMED;**

**COSTS TO BE PAID BY APPELLANT.**