NORTHWEST ARKANSAS RECOVERY, INC. *v.*
Boyce R. DAVIS and Davis and Zega, P.C.

CA 04-202                                         200 S.W.3d 481

Court of Appeals of Arkansas
Opinion delivered December 15, 2004

*Harry McDermott*, for appellant.

*Davis & Zega, P.C.*, by: *Boyce R. Davis*, and *George Oleson*, for appellees.

JOHN MAUZY PITTMAN, Judge. This appeal and cross-appeal involve the collection of attorney's fees and whether the attorney's lien statute, Ark. Code Ann. § 16-22-304 (Supp. 2003), extends to lands owned by the client and benefitted by the attorney's

efforts. The trial court entered judgment for the attorney for the fees but declined to extend an attorney's lien to the client's property. We find no error and affirm.

Appellees Boyce Davis and Davis and Zega, P.C. (collectively Davis), began representing appellant Northwest Arkansas Recovery, Inc. (NWAR), in 1996 to obtain a permit for NWAR to compost municipal solid waste and to obtain access over NWAR's real property to the site for the permit. After termination of the representation, Davis filed the present suit to collect his fees. The complaint alleged that NWAR owed Davis $46,933.90 for representing NWAR and also sought attorney's fees. Davis attached an affidavit to the complaint, stating that he had spent over 500 hours in the representation, that his agreed hourly rate was $150 per hour, and that the present balance was $46,933.90. Davis amended the complaint to seek an attorney's lien over NWAR's real property.[1]

A bench trial was held before the circuit court at which Phillip Fredericks, president of NWAR, testified that he hired Davis to represent a related company, Earthcare Care (Earthcare), in obtaining a solid-waste permit from the state while NWAR hired Davis to obtain access to its real property.[2] Fredericks testified that Earthcare and NWAR were separate entities. He stated that Davis's billing was not clear because it appeared that the bills could include charges for both NWAR and for Earthcare. He also complained that Davis did not provide supporting documentation or explanations for the bills, giving as an example a bill dated November 30, 1998, with a zero beginning balance. Fredericks stated that NWAR paid Davis approximately $7,000. He also admitted that NWAR made a $4,000 payment in May 1998 and a $710 payment in 1999, as well as a payment of $710 on Earthcare's bill. Fredericks testified that he received a bill for NWAR dated January 13, 1998, in the amount of $26,781.45. He stated that he did not protest that particular bill or other statements received by NWAR. He also admitted that NWAR owed Davis some money and that he understood that Davis charged by the hour. He later

---

[1] The amended complaint added Community Bank, the holder of a first mortgage on the property, and David Ruff, the Washington County tax collector. Ruff was later dismissed as a party.

[2] Fredericks's testimony was given at an earlier proceeding that ended in a mistrial. The parties stipulated to the admission of that testimony.

denied that he admitted that NWAR owed Davis any money. He also disputed certain items in the bill such as Davis's travel time, stating that he never agreed to pay travel time or a finance charge. Fredericks stated that the permit was obtained March 5, 1998, and that Davis provided no services for Earthcare after that date. He stated that he felt NWAR did not owe Davis any more money.

Barbara Lane, the office manager and a paralegal for Davis, testified that she generated the monthly statements from attorney time slips. She stated that she viewed NWAR and Earthcare as one entity for billing purposes. She admitted on cross-examination that a statement with a beginning balance of $23,818.95 had no documentation to support the prior balance. She also admitted that the $25,031.45 balance on a January 1998 statement could be a mistake and that NWAR stated that there could be an inaccuracy in that bill. She stated that it was not possible that a $23,000 mistake was made. Lane also stated that NWAR complained about errors in the bills on two occasions but that no one from NWAR complained about a $23,000 error as being duplicative. She also stated that, even though she billed every month, some statements contained charges from two or three months prior to the date of the statement that she could not explain.

Boyce Davis testified that his representation of NWAR lasted from 1996 until it was terminated in early 2001, after an appeal to this court. He admitted that he did not review his prior bills. Davis stated that he tried to record his time as best as he could and that any inaccuracies probably benefitted NWAR. He stated that he billed for research, preparation, interviews, site visits, travel, and conferences with other attorneys. He recalled a discussion with Fredericks concerning his billing and testified that his rate was $150 per hour but also admitted that some of the statements reflected billings at $125 per hour. Davis stated that, on occasion, he billed $25 an hour for travel time. He stated that there was no specific agreement that NWAR would pay for travel time and that NWAR never asked him not to bill for the travel time or requested him to separate the bill by case. Davis stated that he had a discussion with Fredericks regarding the bill prior to the September 1999 jury trial in which he stated that he needed to get paid and Fredericks said that he knew it and would take care of it. Davis stated that Fredericks did not complain about the bill.

Davis stated that he was successful in his representation because he obtained the permit and had the county condemn a public road to provide access to NWAR's property. He did not

recall any efforts to obtain the permit after the issuance date, March 4, 1998. He testified that he was also hired to appeal a chancery court decision in 1995 and filed a motion for rule on the clerk. He stated that the appeal would not accomplish the client's goals of obtaining the easement but was pursued to allow limited access while he filed a private condemnation case in county court. He stated that he did not recall whether he billed for the appeal but admitted that some of the time slips were marked "appeal." He doubted that it would be possible for the appeal work to be included in the bill dated January 13, 1998.

Davis admitted that, in 1995, he filed a private condemnation action, which he later nonsuited in 1997. He stated that he had no time slips or memory of work on this case after the nonsuit in 1997. He then stated that he filed suit seeking to have Washington County condemn property for a public road. He stated that the public road suit was different from the private condemnation suit and that he was ultimately successful in getting the county to open the public road. He stated that, after the road was opened, the issue of damages to the landowner was left unresolved. He admitted that the amount sought in the complaint included time for work done in the 1995 private condemnation case.

Jo Dodson Lindsey, the secretary of NWAR's board, testified that she prepared the 2001 corporate minutes introduced into evidence. She stated that the minutes reflected a discussion of Davis's bill for $43,000 and that Fredericks thought the bill was wrong and said that they needed to "try to work it out" with Davis, which she understood to mean that they were going to discuss the bill and determine whether some charges were more appropriately billed to Earthcare than NWAR. She stated that this was the only board meeting during which Davis's bill was discussed. She admitted that there were no corporate records actually disputing the amount of the bill or communicating the dispute to Davis.

Lindsey admitted that NWAR paid Davis $12,426.17. She stated that Davis's representation was terminated after the permit was obtained and the road was condemned in March 1998. She also stated that, after NWAR was sued by the landowners in the condemnation case, she and Fredericks spoke with Davis about whether Washington County should be the proper defendant instead of NWAR. She stated that Davis told them that NWAR would have to respond to the complaint and that they agreed to

pay Davis $150 an hour for his representation. She also stated that Davis never substituted Washington County as the proper party.

Lindsey disputed certain items in the bills, such as Davis's traveling to Little Rock in 2000 for NWAR and that NWAR did not agree to pay Davis travel time, a finance charge, or for an appellate motion. She admitted that she did not see all the bills as they came in and did not really pay attention to the bills until after January 2003. She further admitted that she never talked with Davis or anyone at the firm and never told them that NWAR was not paying for such services or finance charges. She further did not dispute that NWAR made a payment in 2001 with a legend "Supreme Court appeal." She stated that it was NWAR's position that it did not owe Davis any money in the damages case because Washington County should have been the proper party.

The trial court issued a letter opinion on August 27, 2003, overruling NWAR's statute of limitations defense. The court found that NWAR made partial payments that tolled the statute of limitations. The court noted that Davis's representation did not end until early 2001 and that it would be unreasonable to commence the running of the statute of limitations until the representation ended. The court also found that NWAR did not agree to pay for Davis's travel time or for finance charges and, as a result, disallowed charges of $175, $135.46, and $5,406.99.[3] After adding a January 1, 2002, statement showing a balance owed by NWAR to a January 18, 2002, statement to Earthcare and subtracting the disallowed finance and travel charges, the court found that NWAR owed Davis the sum of $41,216.45 for fees in the representation. The trial court awarded Davis an additional attorney fee of $10,052.80 for the fee litigation. A partial judgment reflecting these findings was entered on August 27, 2003. The court reserved the issue of whether Davis would have an attorney's lien over NWAR's property. At a hearing on September 12, 2003, the trial court ruled from the bench, denying the lien. The court ruled that the attorney's lien provided by the statute attaches to a cause of action and attaches to any settlement or verdict, or to the proceeds of such settlement or verdict. The court also noted that the road was a public road, not owned by NWAR. On September

---

[3] The trial court made a mathematical error in arriving at the $135.46 figure. On Plaintiff's Exhibit 9, there are three entries for finance charges: $87.72, $5.33, and $41.41. The total of those sums is $134.46, not $135.46.

17, 2003, the trial court entered an order denying Davis an attorney's lien over NWAR's real property. This appeal and cross-appeal followed.

NWAR raises five issues on appeal: (1) that the trial court erred in finding that the statute of limitations did not preclude Davis's recovery; (2) that the trial court's finding that Davis and NWAR had an account stated that removed the entire debt from the statute of limitations was against the preponderance of the evidence; (3) that the trial court's findings regarding the amount of Davis's billing errors were against the preponderance of the evidence; (4) that the trial court's finding that Davis's fees were reasonable was against the preponderance of the evidence; (5) that, due to billing mistakes and unreasonable fees, Davis is not entitled to recovery from NWAR. All of NWAR's arguments are factual arguments that the trial court erred in entering judgment for Davis. There are really only two distinct issues involved on the direct appeal: whether the trial court erred in rejecting NWAR's statute of limitations defense and whether the trial court correctly determined the balance owed to Davis. On cross-appeal, Davis raises one issue – that the trial court erred in denying him an attorney's lien on NWAR's land when his efforts gained NWAR definite legal rights and benefits inseparable from the land.

In bench trials, the standard of review on appeal is whether the judge's findings were clearly erroneous or clearly against the preponderance of the evidence. *Foundation Telecomms., Inc. v. Moe Studio, Inc.*, 341 Ark. 231, 16 S.W.3d 531 (2000); *Neal v. Hollingsworth*, 338 Ark. 251, 992 S.W.2d 771 (1999). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, when considering all of the evidence, is left with a definite and firm conviction that a mistake has been committed. *Neal, supra.* This court views the evidence in a light most favorable to the appellee, resolving all inferences in favor of the appellee. *Arkansas Transit Homes, Inc. v. Aetna Life & Cas.*, 341 Ark. 317, 16 S.W.3d 545 (2000). However, a trial court's conclusion on a question of law is given no deference on appeal. *Kelly v. Kelly*, 341 Ark. 596, 19 S.W.3d 1 (2000); *City of Lowell v. M&N Mobile Home Park, Inc.*, 323 Ark. 332, 916 S.W.2d 95 (1996).

We first discuss NWAR's issues relating to its statute of limitations defense. In its letter opinion, the trial court, citing *Taylor v. Slayton*, 231 Ark. 464, 330 S.W.2d 280 (1959), ruled that a partial payment, together with Phillip Fredericks's promise to pay, removed the entire debt from the statute of limitations.

NWAR argues that this was a finding by the trial court of an account stated. The trial court did not find an account stated, and Davis withdrew any claim he had for an account stated. Further, NWAR has confused an account stated with a suit on open account. An account stated and a suit on open account are not the same; in fact, they are the antithesis of one another. An account stated is an agreement between parties who have had previous transactions of a monetary character that all the items of the account representing such transactions are true, and that the balance struck is correct, together with a promise for the payment of such balance. *Hogue v. Jennings*, 252 Ark. 1009, 481 S.W.2d 752 (1972). Conversely, the term "open account" means an account based upon running or concurrent dealings between the parties, which has not been closed, settled, or stated, and in which the inclusion of further dealings between the parties is contemplated. *Plunkett-Jarrell Grocery Co. v. Terry*, 222 Ark. 784, 263 S.W.2d 229 (1953). It is the consent of the debtor that the balance is correct that imparts the character of an account stated to an account, and that consent is lacking here. *See Godfrey v. Hughes & Hall*, 114 Ark. 312, 169 S.W. 958 (1914).

The three-year statute of limitations in Ark. Code Ann. § 16-56-105(1) (1987) applies to actions on an open account. *Taylor v. Slayton, supra.* NWAR argues that Davis's services were terminated in March 1998 and that the statute of limitations began to run at that time. It was disputed as to whether Davis's representation ended in March 1998. The running of the statute of limitations is largely a question of fact. *See Houston Contracting Co. v. Young*, 271 Ark. 455, 609 S.W.2d 895 (1980). Even accepting NWAR's argument that Davis's representation terminated in March 1998, we believe that the action was timely commenced.

■ The law is well settled that a voluntary partial payment arrests the running of the statute of limitations and forms a new period from which the statute must be computed. *Taylor v. White*, 182 Ark. 433, 31 S.W.2d 745 (1930); *Helms v. University of Missouri-Kansas City*, 65 Ark. App. 155, 986 S.W.2d 419 (1999); *Rogers v. University Servs.*, 4 Ark. App. 264, 629 S.W.2d 319 (1982). NWAR admitted that a $4,000 payment was made in June 1998 and a $710 payment was made in January 2001. The June 1998 payment extended the statute of limitations until June 2001. The January 2001 payment extended the limitations period for another

three years. The present suit was filed in November 2001, well within three years from the last payment. We affirm on these points.

■ We next discuss NWAR's arguments that the trial court erred in calculating the amount owed. As examples of what it calls billing errors, NWAR cites the testimony of Barbara Lane, Davis's office manager, that there may have been a mistake in the prior balance of the January 13, 1998, statement as well as Davis's testimony that he did not know how many hours he spent in representing NWAR or that he did not review prior billings and his inability to explain the $15,989.64 previous balance in the January 13, 1998, statement. This is in addition to the disallowed travel and finance charges. However, the amount due on an open account is an issue for the trier of fact. *Swafford v. Sealtest Foods*, 252 Ark. 1182, 483 S.W.2d 202 (1972); *Vickers v. Ripley*, 226 Ark. 802, 295 S.W.2d 309 (1956).

■ NWAR also argues that the time slips produced by Davis for work prior to January 13, 1998, total only $16,757.98. There is no requirement that the attorney submit time records in support of his claim for fees. *Powell v. Henry*, 267 Ark. 484, 592 S.W.2d 107 (1980); *Harper v. Shackleford*, 41 Ark. App. 116, 850 S.W.2d 15 (1993). Further, this ignores the work Davis performed in the damages phase of the condemnation case and its appeal to this court.

■ Citing *Harper v. Shackleford, supra,* NWAR also argues that it was not reasonable for Davis to bill for time that resulted from Davis's errors or negligence. NWAR asserts that Davis should not have billed for representing NWAR during the damages phase of the condemnation suit because Washington County was the proper defendant. NWAR relies on the expert testimony of Lew Steenken, an attorney who represented NWAR at one time, that it was not reasonable for an attorney to bill for additional time resulting from the attorney's negligence. However, fact-finders are not bound to accept an expert opinion as conclusive but should give it whatever weight they think it should have and may disregard any opinion testimony if they find it to be unreasonable. *Gibson Appliance Co. v. Nationwide Ins. Co.*, 341 Ark. 536, 20 S.W.3d 285 (2000). Further, NWAR did not timely file a counterclaim for legal malpractice. We cannot say that the trial court's findings are clearly erroneous, and we affirm on these points.

On cross-appeal, Davis argues that he is entitled to an attorney's lien over NWAR's real property. The attorney's lien statute, Ark. Code Ann. § 16-22-304 (Repl. 1999), provides, in pertinent part, as follows:

> (a)(1) . . . the attorney . . . shall have a lien upon his or her client's cause of action, claim, or counterclaim, which attaches to any settlement, verdict, report, decision, judgment, or final order in his or her client's favor, and the proceeds thereof in whosoever's hands they may come.
>
> . . . .
>
> (b) In the event that the notice is not served upon the adverse party by an attorney . . . representing his client, the same lien created in this section shall attach in favor of the attorney . . . from and after the commencement of an action or special proceeding or the service upon an answer containing a counterclaim, in favor of the attorney . . . who appears for and signs a pleading for his or her client in the action, claim, or counterclaim in which the attorney . . . has been employed to represent the client.

This section gives an attorney's lien on the proceeds of the same cause of action for which the attorney has been employed to represent the client. *Grayson v. Bank of Little Rock*, 334 Ark. 180, 971 S.W.2d 788 (1998). The attorney's lien statute has been limited to cases where there has been an actual recovery of money or property. *Baxter County Bank v. Davis*, 137 Ark. 459, 208 S.W. 797 (1919); *Hershey v. DuVal & Cravens*, 47 Ark. 86, 14 S.W. 469 (1885). It is also proper to trace the proceeds of the judgment if they change hands or are transformed into another form. *Froelich v. Graham*, 349 Ark. 692, 80 S.W.3d 360 (2002). However, the attorney's lien extends only to fees and disbursements rendered in the particular action in which they were incurred and does not cover a general balance due the attorney, or charges rendered in other causes, or charges in causes not intimately connected with the particular action. *Grayson, supra*. The present case does not come within the reach of section 16-22-304 because Davis seeks to extend a lien over property NWAR already owned and its rights in the 320 acres were not the subject of the suit. NWAR hired Davis to obtain access to that land, and he did so by having Washington County open a public road leading to the land over the lands of third parties. *McDonald v. Norton*, 123 Ark. 473, 185 S.W. 791 (1916),

relied on by Davis, is distinguishable because that case involved an attorney's lien in timber rights, the recovery of which was the subject of the attorney's representation. We affirm on this point.

Affirmed.

CRABTREE and ROAF, JJ., agree.