ARKANSAS DEPARTMENT of HEALTH and HUMAN
SERVICES *v.* Tammy BRILEY and Charles Renley

05-1278 237 S.W.3d 7

Supreme Court of Arkansas
Opinion delivered June 1, 2006

*Office of Chief Counsel, Arkansas Department of Health and Human Services,* by: *Gray Allen Turner,* for appellant.

*Kimberly Johnson,* for appellee.

*Deanna S. Evans, Attorney ad Litem,* for appellee.

ANNABELLE CLINTON IMBER, Justice. The Arkansas Department of Health and Human Services (DHHS) appeals the Boone County Circuit Court's order, which found DHHS to be in civil contempt for failing to obey the court's prior orders. On appeal, DHHS seeks reversal of the contempt order. We affirm the circuit court's order holding DHHS in contempt, but hold that the circuit court erred in imposing a sanction that required DHHS to submit a written report on "future staffing issues" after the protective-services case had been closed. Thus, while the written methodology report sanction must be reversed, the $160 reimbursement-fee sanction remains in force.

In January 2005, DHHS participated in a dependency-neglect hearing involving Appellee Tammy Briley. According to

the record, Briley's children had been returned to her, and the case was to be closed once several documents were received. However, on March 8, 2005, the circuit court conducted another review hearing. In that hearing, Briley informed the court that counseling services had not been regularly provided and home visits had not been made. The court ordered Briley to submit to a drug assessment and to random drug screens at the request of DHHS and to follow the recommendations of and otherwise cooperate with DHHS. In that same order, the court ordered DHHS to "maintain a protective services case under strict compliance with this court's orders." The case plan of March 2005 designated the family services to be provided by DHHS: (1) random drug screens, (2) referral to an aide for parenting safety issues, (3) regular visits with the family to monitor the home, (4) referral and contact with a substance abuse provider as to Briley's progress, (5) transportation as needed, and (6) referral for counseling and monitor of progress.

On June 14, 2005, the court held another review hearing. During that hearing, Briley testified that only minimal family services had been provided by DHHS since the March review hearing. She testified that DHHS had failed to (1) help her with transportation to court-ordered AA meetings, (2) conduct regular drug screens, and (3) provide counseling or assistance with housing. In its order entered following the June 14, 2005 hearing, the court closed the protective-services case, finding that Briley should retain permanent custody of the children who were no longer in need of the services of DHHS. The court, however, retained jurisdiction of the case in anticipation of a request for sanctions or contempt arising out of its finding that DHHS failed to make reasonable efforts to provide services to achieve the goal of family preservation.

Immediately thereafter, Appellees Tammy Briley and Charles Renley filed a petition for contempt. The petition alleged that DHHS failed to provide court-ordered services to Briley and requested that DHHS be held in contempt. Briley also submitted an affidavit, in which she asserted that DHHS did not provide the following court-ordered family services: counseling, transportation, random drug screens, or home visitation.

On August 20, 2005, the circuit court held a show-cause hearing. Prior to the hearing, DHHS filed a motion to dismiss the petition, contending that Appellees had failed to identify which order the agency had violated. The circuit court denied the motion to dismiss. At the hearing, several witnesses testified as to

what actions the agency had taken during the case. The DHHS county supervisor, Teresa Head, testified that because her caseload totaled eighty-five cases, she had difficulty completing all the services outlined in the case plan.

The circuit court subsequently entered an order finding DHHS in civil contempt, with remediation to be the payment of $160 to Appellee Tammy Briley for her out-of-pocket expenses and the preparation and submission within sixty (60) days "of a written methodology for responding to future staffing issues in the 14th Judicial Circuit . . . ." Thereafter, DHHS filed a "motion to reconsider and to modify findings of fact and conclusions of law." From the contempt order, DHHS now appeals.

We have jurisdiction of this case in order to achieve fair allocation of the appellate workload between this court and the Arkansas Court of Appeals. Ark. Sup. Ct. R. 1-2(g) (2006). Our court recently set forth the standards for determining whether a contempt order constitutes civil or criminal contempt. In *Omni Holding & Development Corp. v. 3D.S.A., Inc.*, 356 Ark. 440, 448-49, 156 S.W.3d 228, 234-35 (2004), we stated:

> We begin by distinguishing civil and criminal contempt:
>
>> Contempt is divided into criminal contempt and civil contempt. *Johnson* [*v. Johnson*, 343 Ark. at 197, 33 S.W.3d at 499. Criminal contempt preserves the power of the court, vindicates its dignity, and punishes those who disobey its orders. *Johnson*, 343 Ark. at 197, 33 S.W.3d at 499. Civil contempt, on the other hand, protects the rights of private parties by compelling compliance with orders of the court made for the benefit of private parties. *Id.* This court has often noted that the line between civil and criminal contempt may blur at times. *Id.* Our Court of Appeals has given a concise description of the difference between civil and criminal contempt. *See Baggett v. State*, 15 Ark. App. 113, 116, 690 S.W.2d 362, 364 (1985) ("[C]riminal contempt *punishes* while civil contempt *coerces.*" (emphasis in original)).
>>
>> In determining whether a particular action by a judge constitutes criminal or civil contempt, the focus is on the character of relief rather than the nature of the proceeding. *Fitzhugh v. State*, 296 Ark. 137, 138, 752 S.W.2d 275, 276 (1988). Because civil contempt is designed to coerce compliance with the court's order, the civil contemnor may free himself or herself by

complying with the order. *See id.* at 139, 752 S.W.2d at 276. This is the source of the familiar saying that civil contemnors "carry the keys of their prison in their own pockets." *Id.* at 140, 752 S.W.2d at 277 (quoting *Penfield Co. v. S.E.C.,* 330 U.S. 585, 593 (1947)) (quoting *In re Nevitt,* 117 F. 448, 461 (8th Cir. 1902)). Criminal contempt, by contrast, carries an unconditional penalty, and the contempt cannot be purged. *Fitzhugh,* 296 Ark. at 139, 752 S.W.2d at 276-277.

*Ivy v. Keith,* 351 Ark. 269, 279-80, 92 S.W.3d 671, 677-78 (2002).

Moreover, in *Fitzhugh v. State,* 296 Ark. 137, 752 S.W.2d 275 (1988), this court quoted from the United States Supreme Court's decision of *Hicks ex rel. Feiock v. Feiock,* 485 U.S. 624 (1988). In *Feiock,* the Court, in an attempt to distinguish between the two contempts, said:

[T]he critical features are the substance of the proceeding and the character of the relief that the proceeding will afford. "If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court." *Gompers v. Bucks Stove & Range Co.,* 221 U.S. 418 (1911). The character of the relief imposed is thus ascertainable by applying a few straightforward rules. If the relief provided is a sentence of imprisonment, it is remedial if "the defendant stands committed unless and until he performs the affirmative act required by the court's order," and is punitive if "the sentence is limited to imprisonment for a definite period." *Id.,* at 442. If the relief provided is a fine, it is remedial when it is paid to the complainant, and punitive when it is paid to the court, though a fine that would be payable to the court is also remedial when the defendant can avoid paying the fine simply by performing the affirmative act required by the court's order. These distinctions lead up to the fundamental proposition that criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings, including the requirement that the offense be proved beyond a reasonable doubt. *See, e.g., Gompers, supra,* at 444; *Michaelson v. United States ex rel. Chicago, St. P., M. & O.R. Co.,* 266 U.S. 42 (1924). [Footnote omitted.]

485 U.S. at 631-32.

*Omni Holding & Dev. Corp. v. 3D.S.A., Inc.*, 356 Ark. at 448-49, 156 S.W.3d. at 234-35.

■ In this case, the contempt order entered by the circuit court constitutes civil contempt because the sanctions imposed on DHHS were not punitive; rather, the sanctions were remedial. DHHS could purge itself of contempt by performing the affirmative acts required by the circuit court — paying Briley's out-of-pocket expenses and submitting a written methodology for responding to future staffing issues in the Fourteenth Judicial Circuit. Our standard of review in civil contempt proceedings is whether the finding of the circuit court is clearly against the preponderance of the evidence. *See Gatlin v. Gatlin,* 306 Ark. 146, 811 S.W.2d 761 (1991).

For its first point on appeal, DHHS claims that the contempt finding should be reversed because the petition for contempt did not give DHHS sufficient notice of what court orders had been violated. We have observed that willful disobedience of a valid court order is contemptuous behavior. *Omni Holding & Dev. Corp. v. 3D.S.A., Inc., supra.* However, before one can be held in contempt for violating the court's order, the order must be definite in its terms and clear as to what duties it imposes. *Id.* In the instant case, DHHS complains that it was not given proper notice of "why it was being held in contempt." Moreover, DHHS suggests that Appellees failed to give DHHS proper notice of what orders had been violated "because the trial court never clearly articulated what DHHS had been ordered to do in this case."

Listing a gamut of directives that DHHS failed to comply with, the circuit court concluded in its order that "[DHHS] deliberately refused to comply with the orders of the Court and failed, despite direct prompting by the Court, to remedy that situation after it had persisted from March 2005, until the hearing on June 14, 2005." As a result, the court held DHHS in civil contempt. In imposing sanctions, the court ordered DHHS to submit a "detailed methodology" explaining the training level of employees, travel and reasonable response to the clients' needs, hiring mechanisms, and assurance of compliance with court orders and case plan requirements. Moreover, the court ordered DHHS to pay a $160 reimbursement fee to Briley for her out-of-pocket expenses. Again, we must affirm the circuit court's finding of civil contempt unless its finding was clearly against the preponderance of the evidence. *See Gatlin v. Gatlin, supra.*

The record reveals that in March 2005, the court ordered DHHS to maintain a protective-services case under strict compliance with the court's orders, with the goal of the case to be family preservation. The order specifically required that Briley submit to random drug testing at the request of DHHS, submit to a drug assessment, follow recommendations of that assessment, and cooperate with DHHS, including attendance at three to five AA meetings per week. Likewise, the March 2005 case plan designated the services to be provided by DHHS, including random drug screens, regular visits to monitor the home, transportation, and referral for counseling.

As to the issue of compliance with the circuit court's prior order, the hearings and pleadings before the circuit court revealed the following:

- DHHS only went to Briley's house two times between February 2005 and September 2005.

- Briley expected DHHS to provide transportation to and from counseling and AA meetings and to organize counseling for one of the children. DHHS, instead, never offered counseling. Briley, however, accessed counseling on her own and with her own resources, and she attested that one of her children went to counseling solely because of her efforts.

- DHHS only requested three random drug screens from Briley throughout the life of the case. Briley stated that she called DHHS numerous times to ask about drug tests, but she was told that offering to submit to a drug screen did not make it a random test.

- Despite Briley's request, DHHS never provided transportation for job interviews. In fact, DHHS did not provide any type of transportation for the children either.

- DHHS never visited the children.

- DHHS conducted only one home visit.

- DHHS failed to review the updated case plan as of March 2005.

When questioned about DHHS's failure to provide Briley's requested services, Teresa Head, the county supervisor, explained that she was the only experienced worker with a caseload of eighty-five cases. In

other words, DHHS's only defense was that, considering staffing shortages and heavy caseloads assigned to the caseworkers, the agency was doing all it could for Briley and her family. Yet, based on the evidence presented to the court, we cannot say that the court's contempt order was clearly against the preponderance of the evidence.

█ In contending that the court erred in holding the agency in contempt, DHHS relies upon this court's decision in *Edwards v. Jameson*, 283 Ark. 395, 677 S.W.2d 842 (1984). That case, however, is clearly distinguishable. In *Edwards*, the only written accusation in the petition was that Edwards violated the court's "lawful orders." In other words, there was no charge of a particular violation of the court's orders. We held that the absence of the required specific notice invalidated the court's finding of contempt.[1] *Id.* In contrast, the instant case involves a specific charge set forth in the attachment to Appellees' petition for contempt. In her affidavit, Briley attested that DHHS failed to provide her random drug screens, home visitation, counseling, and transportation. Moreover, at the hearing, Briley testified, among other things, that DHHS never visited with her children. Thus, the facts here are clearly different from those at issue in the *Edwards* case. We therefore affirm the circuit court's finding of civil contempt. *See Ark. Dep't of Human Servs. v. Clark*, 305 Ark. 561, 810 S.W.2d 331 (1991) (upholding the trial court's finding of contempt and its imposition of a $250 fine based upon the failure of DHS to comply with the court's prior order directing that agency to provide bus tokens and cash assistance to the family).

For its second and last point on appeal, DHHS contends that the sanctions imposed by the circuit court were improper. As mentioned earlier, the court sanctioned DHHS with a $160 reimbursement fee to be paid to Briley for her out-of-pocket expenses, and the circuit court required DHHS to prepare a written methodology report. Before addressing the merits of DHHS's last argument on appeal, we must first determine whether the argument has been preserved for appellate review.

Following the entry of the court's contempt order on September 26, 2005, DHHS filed a "motion to reconsider and to modify findings of fact and conclusions of law" on October 19,

---

[1] The *Edwards* case involved a criminal contempt sanction.

2005. In that motion, DHHS presented its first and only challenge to the propriety of the sanctions imposed by the court. On the same day, DHHS filed a notice of appeal from the contempt order entered on September 26, 2005. The record does not reflect that the circuit court ruled on DHHS's motion for reconsideration.[2]

In the context of Ark. R. Civ. P. 59 (2006), we have specifically addressed the issue of whether posttrial motions are required in order to preserve a point for appellate review. Pursuant to Ark. R. Civ. P. 59(f), if a party has already properly preserved an error concerning any of the grounds listed in Ark. R. Civ. P. 59(a), that party is not required to make a motion for new trial in order to argue those grounds on appeal. *Stacks v. Jones*, 323 Ark. 643, 916 S.W.2d 120 (1996). However, if a party has failed to properly preserve any of the grounds listed in Ark. R. Civ. P. 59(a), a posttrial motion is necessary to preserve the point for appellate review. In this case, DHHS did not object when information about Briley's out-of-pocket expenses was presented to the trial court at the contempt hearing. Moreover, to the extent that DHHS challenged the evidentiary basis of the $160 reimbursement fee in its motion for reconsideration, the record contains no ruling on that motion.[3] Thus, DHHS's argument on appeal regarding the sufficiency of the evidence to support the $160 reimbursement fee has not been preserved for appellate review. *Hurst v. Dixon*, 357 Ark. 439, 182 S.W.3d 102 (2004): *Stacks v. Jones, supra.*

With regard to the second sanction, however, DHHS did not have an opportunity to object to the sanction because the trial court *sua sponte* and without notice to either party imposed a requirement that DHHS submit a methodology report. Under such circumstances, where the appellant has no notice or opportunity to object to the court's sanction until after entry of the contempt order, a posttrial motion is not necessary to preserve the point for appellate review.[4] Thus, proceeding to the merits on this point, we must conclude that the circuit court erred in imposing

---

[2] The motion is not deemed denied under Ark. R. App. P. – Civ. 4(b)(1) (2006) because DHHS did not file the motion within ten (10) days after entry of the contempt order.

[3] Pursuant to Ark. R. Civ. P. 60(a) (2006), the circuit court lost jurisdiction to rule on the motion ninety days after entry of the contempt order.

[4] The rationale set forth in *Stacks v. Jones, supra,* would not apply where the trial court *sua sponte* and without notice to either party imposes a contempt sanction.

the second sanction. In so doing, the court required that DHHS prepare and submit within sixty (60) days "a written methodology for responding to future staffing issues in the 14th Judicial Circuit . . . ."

 Civil contempt is instituted to preserve and enforce the rights of private parties to suits and to compel obedience to orders and decrees made for *the benefit of those parties. Johnson v. Johnson*, 343 Ark. 186, 33 S.W.3d 492 (2000). Here, the court had already closed the underlying protective-services case, finding that Briley and her children were no longer in need of the services of DHHS. The court retained jurisdiction of the case *only* in anticipation of a request for sanctions or contempt. The sanction mandating a written report on "future staffing issues" could not benefit Briley because her case had been closed. Thus, the court imposed an inappropriate civil contempt sanction in this case when it required DHHS to submit a written methodology report.

Affirmed in part; reversed in part.

HANNAH, C.J., and GUNTER, J., concurring in part; dissenting in part.

JIM HANNAH, Chief Justice, concurring in part and dissenting in part. I concur in part and dissent in part. I agree that the finding of civil contempt was proper. However, I disagree that the circuit court erred in mandating further actions by the Department of Human Services such as the written report on "future staffing issues." While this appeal is framed in terms of contempt in the case concerning Tammy Briley and Charles Renley, contempt in the pending case is only part of what is at issue. Although the court was convinced that sufficient improvement had been achieved by Briley to warrant closing the present case on her child prosecuted under the juvenile code, the circuit court decided to address DHHS's failure to adequately perform, a matter that is certainly relevant to the integrity of the proceedings before the court. The integrity of the proceedings is a matter that must be addressed by the circuit court whenever the issue arises to assure fair administration of justice both in this case and in the many other cases before the circuit court involving neglected children. This case presents an abject failure of DHHS to perform its statutory duties. It also involves a failure to comply with the circuit court's orders. The circuit court has the inherent authority to control parties who appear before it, especially parties such as DHHS who appear repeatedly in court on many different cases.

Further, Briley suffered as a consequence of DHHS's failure to perform. She brought her concerns to the attention of the circuit court. Even though her case came to an end, Briley continued to pursue her complaints about DHHS's failure to perform. There seems to be little doubt that Briley benefitted from the sanctions in knowing that DHHS would perform adequately in assisting others in the future. Further still, while one is certainly hopeful that Briley will not find herself back under court supervision with respect to her child, repetition in these matters is not uncommon. In that way as well Briley may benefit in knowing that in the future should she find herself back under court supervision, she will receive the assistance ordered by the court.

The record in this case clearly shows that the circuit court was attempting to assure that all neglected children receive assistance from DHHS as ordered by the circuit court. Because the circuit court held the matter over for a hearing after closing the protective services case on appellees, it is apparent that what was at issue was more far-reaching than what had or had not occurred during the pendency of the action against Briley and Renley. The difficulties that the court experienced with DHHS in the present case were also being experienced in other dependency-neglect cases. The circuit court stated in its order that it "recognizes that the events of this case demonstrate an organizational failure to properly prepare for and respond to massive local department staff layoffs or leaving." In other words, what the circuit court is concerned about is not only the events of the case involving Briley and Renley, but rather it is concerned about all cases in the judicial district involving DHHS. The circuit court went on in the order to state that "[t]he court finds this remedy is necessary to avoid the placing of clients in the precarious position of not receiving services, to avoid unnecessary delays that caused foster care placement at the outset." Obviously, the circuit court was attempting to put in place a system designed to assure DHHS's performance in future cases, which benefits all children over whom the court has jurisdiction rather than just the child at issue in this case. This is the court's duty.

Arkansas Code Annotated Section 9-27-302(1) (Repl. 2002) provides:

This subchapter shall be liberally construed to the end that its purposes may be carried out:

(1) To assure that all juveniles brought to the attention of the courts receive the guidance, care, and control, preferably in each juvenile's own home when the juvenile's health and safety are not at risk, which will best serve the emotional, mental, and physical welfare of the juvenile and the best interest of the state. . . .

The courts hold the primary responsibility and supervisory control to see that the children of this state receive the assistance dictated by the statutes and the care and protection dictated by the judiciary's inherent obligation to serve justice. If DHHS does not fulfill its duty under the statutes, the circuit court cannot fulfill its duty. In *Arkansas Department of Human Services v. R.P.*, 333 Ark. 516, 970 S.W.2d 225 (1998), this court found that the circuit court is empowered to order family services, including ordering DHHS to fulfill its duty. In that case, this court affirmed an order that DHHS pay to restore utilities.

As the court of appeals noted in *Arkansas Department of Human Services v. Gruber*, 39 Ark. App. 112, 839 S.W.2d 543 (1992),[1] it is DHHS's duty to cooperate with, assist, and solicit the cooperation and assistance of all public or private agencies or organizations involved in or dedicated to providing services. The court of appeals further noted that the court cannot fulfill its statutory responsibility without DHHS's full cooperation with the juvenile courts throughout the state.

A circuit court has the inherent authority to protect the integrity of the court in actions before it. *Valley v. Phillips County Election Comm'n*, 357 Ark. 494, 970 S.W.2d 225 (1994). Moreover, the circuit court has the inherent authority to protect the integrity of the proceedings and to safeguard the rights of the litigants before it. *City of Fayetteville v. Edmark*, 304 Ark. 179, 801 S.W.2d 275 (1990). I believe that the circuit court was within its inherent authority to order DHHS to provide assurance that it would and could carry out its obligations. Further, the use of the contempt power was appropriate. "A court's contempt power may be wielded to preserve the court's power and dignity, to punish disobedience of the court's orders, and to preserve and enforce the parties' rights." *Hart v. McChristian*, 344 Ark. 656, 670, 42 S.W.3d 552, 562 (2001). Accordingly, the circuit court was also well

---

[1] While in *Arkansas Department of Human Services v. Gruber*, 39 Ark. App. 112, 839 S.W.2d 543 (1992), the issue concerned specifically youth services, the services due all children are naturally just as vital.

within its authority to use the contempt power to assure compliance. Otherwise, a circuit court is left with no meaningful ability to assure that the children in need receive the attention and services the circuit court is bound to provide under the statutes. The courts have no staff available to provide the services the statutes impose on DHHS. In light of DHHS's apparent failure to perform its duties, I would affirm the circuit court's decision to mandate that DHHS report to the circuit court its fitness to perform its statutorily required function.

GUNTER, J., joins.