Walter John WILLIAMS *v.* Kimberly Williams RAMSEY

CA 07-221                                                  270 S.W.3d 345

Court of Appeals of Arkansas
Opinion delivered December 19, 2007

*Naif S. Khoury*, for appellant.

*Boyer, Schrantz, Rhoads & Teague, P.A.*, by: *Johnnie Emberton Rhoads*, for appellee.

DAVID M. GLOVER, Judge. This case, involving a thirteen-year-old child, represents the latest battle in a long court war between the parents following the entry of the divorce decree on September 17, 1993. Their daughter had been born only a few months earlier, on May 21, 1993. Primary custody of the child was awarded to the mother, appellee Kimberly Williams Ramsey. In this latest chapter of the couple's history of prolonged acrimony, appellee filed a petition/amended petitions for contempt, which included a request for modification of appellant Walter John Williams's visitation. The first petition in this regard was filed on November 1, 2005, and the last amended petition was filed on December 29, 2005. The hearing on the petitions began on June 20, 2006, and continued on June 28, 2006. The court's order was entered on August 7, 2006, finding that appellant was in contempt of prior court orders and also that appellant's visitation should be reduced to one Saturday a month, with summer visitation eliminated. This appeal followed. We affirm the trial court's decision with respect to contempt, but reverse and remand on the reduction in visitation.

### Visitation Reduction

For his first point of appeal, appellant contends that the trial court erred in reducing his visitation with his child, particularly in light of Dr. Martin Faitak's testimony that a reduction or change in visitation would not be beneficial to the child. We agree.

In *Sharp v. Keeler*, 99 Ark. App. 42, 56-57, 256 S.W.3d 528, 538 (2007), this court set forth the standard of review concerning modifications to visitation:

> In reviewing domestic-relations cases, this court considers the evidence de novo, but will not reverse the trial court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. It is well settled that the trial court maintains continuing jurisdiction over visitation and may modify or vacate such orders at any time on a change of circumstances or upon

knowledge of facts not known at the time of the initial order. It is also well settled under Arkansas law that reversal is warranted where a trial court modifies visitation where no material change in circumstances warrants such a change. While visitation is always modifiable, our courts require a more rigid standard for modification than for initial determinations in order to promote stability and continuity for the children, and to discourage repeated litigation of the same issues. The party seeking a change in visitation has the burden below to show a material change in circumstances warranting the change in visitation. The main consideration in making judicial determinations concerning visitation is the best interest of the child. Important factors to be considered in determining reasonable visitation are the wishes of the child, the capacity of the party desiring visitation to supervise and care for the child, problems of transportation and prior conduct in abusing visitation, the work schedule or stability of the parties, and the relationship with siblings and other relatives. The fixing of visitation rights is a matter that lies within the sound discretion of the trial court.

As we often have repeated, the trial judge is the person in the best position to observe the parties and evaluate the witnesses, their testimony, and the child's best interest. *Id.*

Here, the trial court reduced appellant's visitation from every other weekend to one Saturday a month, with summer visitation eliminated. In reaching that conclusion, the trial court explained that the rules "that were put in place were not put in place to restrict Mr. Williams as an effort to punish him, but rather to stop a pattern of undermining, alienation, and problems that were being created for this child as a result of the behaviors. This Court has seldom gone as far as I've gone in this case. But what little support, what little cooperation I feel like I've gotten from Mr. Williams has been, primarily, such as the counseling efforts he made, window dressing."

In the August 7, 2006 order, the trial court found, *inter alia*, "that the defendant has undermined the relationship of the minor child and the plaintiff by calling his wife 'Mommy' to the minor child and calling the plaintiff 'Kim' to her. The defendant has undermined the minor child's relationship with her therapist, Dr. Martin Faitek. Further, he has undermined the minor child's acceptance of taking needed medication." Summarizing the order, the following items were of concern to the trial court: 1) that appellant only now agrees to get counseling and make the child

take her medication, which had been previously ordered; 2) that appellant continues to believe that it is best for the child to live with him and call his wife "Mommy"; 3) that appellant has engaged in a consistent pattern of behavior violating the court's orders; 4) that because of appellant's actions, the child still holds out hope that she will be allowed to live with him, which destabilizes her home situation; 5) that his actions show a focus on himself rather than the child. In light of the foregoing, the trial court determined that a material change of circumstances had occurred and that it was in the child's best interest to modify visitation.

It seems clear from the record of this case that appellant has effectively been a troublemaker concerning the interrelationships among himself, the child, and appellee. It is difficult under such circumstances to segregate conduct that establishes contempt from conduct that justifies a change in custody or visitation. In *Sharp v. Keeler*, 99 Ark. App. at 56, 256 S.W.3d at 538, which involved a change of custody, supervised visitation, and contempt, we explained:

> On this point, the dissent argues that this case was one of contempt, not change of custody. *It is not either/or; it is both.* We cannot ignore the fact that the trial court did hold Sharp in contempt on two separate bases. The record reflects that the court specifically noted that if it thought placing Sharp in jail for several days would cure the problem, then it would indeed simply be a contempt issue, but that this was in fact more.

(Emphasis added.) In *Sharp*, the offending parent's conduct was described as rising to the level of harassment and torment. We affirmed the change in custody, which was based on the trial court's determination that the mother acted in ways that were detrimental to the child and that parental alienation on her part constituted a material change of circumstances that warranted a change of custody. We reversed the trial court, however, and remanded on the issue of the change to supervised visitation, explaining:

> In short, we find that there was no evidence to support the trial court's decision that Sharp should only receive four hours of supervised visitation per week, and we hold that that decision was clearly against the preponderance of the evidence. We direct that the trial court award Sharp the same unsupervised visitation that Keeler enjoyed prior to the change of custody. . . .

99 Ark. App. at 58, 256 S.W.3d at 539.

Here, it is perfectly understandable that the trial court has grown frustrated and weary of dealing with a father who appears to put himself above the best interests of his child and who seems determined to act like a child himself in dealing with his own child and his ex-wife. However, even recognizing the father's bad conduct, we cannot overlook the evidence that was before the trial court, and we have concluded that it does not rise to the level that would constitute a change of circumstances, especially in light of the fact that Dr. Faitak testified that a reduction in visitation would not be beneficial to the child. We, therefore, reverse the trial court's decision to reduce visitation and order the trial court to reinstate the prior visitation schedule.

## Contempt

For his remaining issue, appellant contends that there was insufficient evidence presented to show that he willfully and intentionally violated the court's previous orders sufficient to be held in contempt and placed in jail. We disagree.

As our supreme court explained in *Arkansas Department of Health & Human Services v. Briley*, 366 Ark. 496, 500, 237 S.W.3d 7, 9-10 (2006):

> We begin by distinguishing civil and criminal contempt:
>
> Contempt is divided into criminal contempt and civil contempt. Criminal contempt preserves the power of the court, vindicates its dignity, and punishes those who disobey its orders. Civil contempt, on the other hand, protects the rights of private parties by compelling compliance with orders of the court made for the benefit of private parties. This court has often noted that the line between civil and criminal contempt may blur at times. Our Court of Appeals has given a concise description of the difference between civil and criminal contempt. ("Criminal contempt punishes while civil contempt coerces.") In determining whether a particular action by a judge constitutes criminal or civil contempt, the focus is on the character of relief rather than the nature of the proceeding. Because civil contempt is designed to coerce compliance with the court's order, the civil contemnor may free himself or herself by complying with the order. This is the source of the familiar saying that civil contemnors "carry the keys of their prison in their own

pockets." Criminal contempt, by contrast, carries an unconditional penalty, and the contempt cannot be purged.

(Citations omitted.)

Here, both types of contempt were imposed by the trial court. The trial court incarcerated appellant for ten days, which commenced immediately for calling his wife "Mommy" and for failing to give the child her medication. Furthermore, the trial court also ordered appellant to remain in jail after his ten-day incarceration until he paid $1500 in previously ordered attorney fees. The initial ten-day period of incarceration falls under the category of criminal contempt because it carried an unconditional penalty, *i.e.*, it could not be purged. The period of incarceration that followed falls within the category of civil contempt because it was designed to coerce appellant to pay the monies for attorney's fees that he had been previously ordered to pay. He was able to free himself by complying. Appellant challenges only the initial ten-day period of incarceration.

The standard of review of a case of criminal contempt is well-settled: an appellate court views the record in a light most favorable to the trial judge's decision and sustains that decision if it is supported by substantial evidence. *Conlee v. Conlee*, 370 Ark. 89, 257 S.W.3d 543 (2007). Where a person is held in contempt for failure or refusal to abide by a judge's order, the reviewing court will not look behind the order to determine whether it is valid. *Id.*

In making his argument, appellant focuses his attention upon a July 20, 2005 order that was not actually entered until December 28, 2005, which was after the instant contempt proceedings were initiated. With respect to that order, he contends that "the order was not in writing for the appellant to refer to in order to insure he was in compliance with the ruling of the Court." He then proceeds to go through this order and explain why he was not in contempt of it. What he neglects to mention, however, and does not include in his addendum, is an order that was entered on May 12, 2005.

In the May 12, 2005 order, the trial court provided that both parties were to give the child her medication as prescribed and that appellant was to refer to appellee as "Mommy," and not to refer to the step-mother as "Mommy." In its August 7, 2006 order finding appellant in contempt, the trial court specifically found that appellant had violated the court's order concern-

ing reference to his wife as "Mommy" to the minor child and failing to give the minor child her medication when she was with him on visitation. Viewing the record in a light most favorable to the trial judge's decision, we conclude that it is supported by substantial evidence. For example, appellee testified that in November 2005, appellant came to her door to return the child after a visit, and that in front of her and the child, appellant told the child that he would try to talk "Mommy," referring to the step-mother, into getting leather seats for the car they were going to buy. Likewise, appellant's explanation for not requiring the child to take her medication was, in part, "I've seen her take it sometimes. Sometimes, I've turned my back and done something else. I'm not going to say that every single time I've watched her put the medicine in her mouth." The trial court was in the best position to judge the credibility of these witnesses, and in such matters we defer to the trial court.

Reversed in part and affirmed in part.

HEFFLEY, J., agrees.

BAKER, J., concurs.

KAREN R. BAKER, Judge, concurring. I agree that a violation of the court's previous directives does not compel a change in custody. *See Sharp v. Keeler*, 99 Ark. App. 42, 256 S.W.3d 528 (2007) (Baker, J., dissenting) (citing *Carver v. May*, 81 Ark. App. 292, 101 S.W.3d 256 (2003)). Examining Mr. Williams's individual acts, they each appear to be almost trivial; however, taken as a whole, a continuing failure to abide by the trial court's orders could well provide a basis for the trial court to curtail Mr. Williams's opportunity to influence the child with his behavior. Certainly, if Mr. Williams persists in this behavior despite the trial court's punishment of the violations by its contempt powers his conduct will, at some point, affect the best interest of the child. *See Carver, supra* (appellant's interference with visitation was so extreme that the best interest of the children required that they be removed from the situation).

In light of the fact that appellant contends that the trial court erred in reducing his visitation with his child, *particularly in light of Dr. Martin Faitek's testimony that a reduction in visitation would not be beneficial to the child,* I emphasize that the trial judge was entirely correct in her determination that Dr. Faitek's expert opinion is not dispositive of the case. A trial judge does not have to accept an

expert's opinion. *See generally Northwest Arkansas Recovery Inc. v. Davis*, 89 Ark. App. 62, 200 S.W.3d 481 (2004) (citing *Gibson Appliance Co. v. Nationwide Ins. Co.*, 341 Ark. 536, 20 S.W.3d 285 (2000)) (stating that fact-finders are not bound to accept an expert opinion as conclusive, but should give it whatever weight they think it should have and may disregard any opinion testimony if they find it to be unreasonable).

Furthermore, while I concur in the decision to reverse and remand with instructions to reinstate the previous visitation schedule based on the facts now before us, a significant period of time has passed while this appeal has proceeded. If the situation has changed, the trial court is always free to enter such orders as may be necessary to protect the best interest of the child.